Coy Ray CAMPBELL, Petitioner-Appellant,

v.

Dr. George J. BETO, Director of the Texas Department of Corrections, Respondent-Appellee.

No. 72–1737.*

United States Court of Appeals. Fifth Circuit.

April 18, 1972.

* It is appropriate to dispose of this case summarily. See Groendyke Transportation Inc. v. Davis, 5 Cir., 1969, 406 F.2d 1158.

Coy Ray Campbell, pro se.

Crawford Martin, Atty. Gen. of Tex., Austin, Tex., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The District Court refused to allow this § 1983 suit by an inmate of the Texas Department of Corrections to ever get off the ground, by (i) refusing to permit it to even be docketed without prepayment of costs, (ii) dismissing the "undocketed" case under Rule 12(b) of the Federal Rules of Civil Procedure for failure to state a claim on which relief could be granted, and (iii) refusing to allow an appeal in forma pauperis from these actions. We conclude that the District Court erred in these actions [1] and accordingly grant leave to file the appeal in forma pauperis and vacate the District Court's order dismissing the case.

At the outset it must be remembered that prisoner petitions, no less than any other complaint filed in Federal Court, may not be dismissed on the pleadings "unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim." Cook & Nichol, Inc. v. Plimsoll Club, 5 Cir., 1971, 451 F.2d 505, 506; Haines v. Kerner, 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652; Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Barber v. M/V "Blue Cat," 5 Cir., 1967, 372 F.2d 626; Cruz v. Beto, 1972, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263. For purposes of considering a Rule 12(b) motion to dismiss the well pleaded allegations of the complaint must be accepted as true. Cruz v. Beto, *supra*; Holmes v. Silver Cross Hospital, N.D.Ill., 1972, 340 F. Supp. 125; Cooper v. Pate, 1964, 378 U. S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030.

On that approach, the petition in the present case alleges the following events. Petitioner is an inmate at the Wynn Unit of the Texas Department of Corrections who has been classified a Fourth Class Medical by the TDC as a result of heart trouble. Allegedly, under TDC regulations his Fourth Class Medical classification—which is to the prison system what 4–F is to the military—absolutely prohibits TDC officials from ordering him to perform work in the field. Nevertheless, the petition charges, "on or about the date of August 12, 1970, Respondent Warden C. L. McAdams knowing full well that Plaintiff was classified Class IV medically by virtue of said heart condition and classified as well not to be subjected to manual labor or worked in the field, did knowingly, willfully and negligently order the plaintiff to be assigned to a 'hoe squad' and made to work in the field where the Plaintiff was required to do heavy manual labor such as digging pipe

---

1. Since the District Court made no findings regarding indigency, we assume that he was satisfied with the allegations and affidavit of poverty which is prerequisite to 28 U.S.C.A. § 1915 leave to file suit without prepayment of costs.

line ditches, carrying 100 pounds sacks of dairy feed, shovel dirt, etc."

Further, the petition alleges, a TDC doctor (Dr. Mitchell) had previously examined the prisoner, diagnosed his condition as "Tachicardias" and prescribed a medication known as "Purodigin" to control the condition, but that the defendants "knowingly, willfully and negligently refused to permit" the medication to be sent to the prisoner while he was in the field.

As a result of this hard labor assignment and refusal to allow medication, the prisoner suffered a heart attack on November 18, 1970.

Thereafter the petitioner instituted the present suit seeking (i) compensatory damages in the amount of $15,000, (ii) injunctive relief against his being ordered to perform other hard work or field labor, and (iii) injunctive relief ordering proper medical attention for all inmates. While this petition was pending in the District Court, petitioner was placed in Disciplinary Lock-Up on a restricted diet of bread and water for fifteen days. Although TDC regulations seem to require daily examination of inmates in segregated status,[2] the supplemental complaint alleges that the defendants, knowing full well of petitioner's heart condition, did nonetheless "knowingly, willfully and negligently * * * refuse plaintiff permission to see a doctor until the thirteenth day," at which time Dr. Shelton did examine the plaintiff and order the medical captain to provide the inmate with three meals a

day as well as certain medication. The plaintiff did not receive either the food or the medication until his release from Disciplinary Lock-Up some days later.

When petitioner requested that the District Court add these allegations to the petition then pending and filed, various TDC officials allegedly "advised" the plaintiff that "the filing of any further legal action against the TDC or its officials constituted 'agitation' and * * * if [plaintiff] filed any further writs against the TDC or its officials" he would be punished.

Finally, the petitioner alleges that throughout his incarceration TDC officials have utilized "persons not licensed to practice medicine in the State of Texas to diagnose ailments of inmates and prescribe medicines therefor and more particularly did order and utilize persons not licensed to practice medicine in the State of Texas, to wit: Respondent T. L. Waggoner, Medical Captain, and Inmates Joe Goodman, Massey and Hirsch, to diagnose plaintiff's ailments and prescribe medicines therefor and further did willfully and negligently fail to provide a full time medical doctor at said Wynn Unit, a unit containing approximately 1500 inmates."

Although the Federal Courts are very properly loathe to interfere in the internal administration of the prisons,[3] and wide discretion is allowed prison officials in maintaining order and discipline,[4] our constitutional duties require that the courts be ever vigilant to assure that the conditions of incarcera-

---

2. The TDC memorandum on "Disciplinary Procedures" directed to all wardens from the TDC's Assistant Director for Treatment directs that, "All inmates in solitary must be checked by a physician or medical officer at least once a day." The memorandum continues, "Prisoners in punitive segregation will be visited, observed, or evaluated a minimum of * * * daily by medical personnel." And finally, "*Exercise Caution so that Health is not Jeopardized.*" Novak v. Beto, 5 Cir., *infra*, 453 F.2d 661 at 668–669 (emphasis in original).

3. Walker v. Blackwell, 5 Cir., 1966, 360 F.2d 66; Walker v. Pate, 7 Cir., 1966, 356 F.2d 502, cert. denied, 384 U.S. 966, 86 S.Ct. 1598, 16 L.Ed.2d 678; Childs v. Pegelow, 4 Cir., 1963, 321 F.2d 487, cert. denied, 1964, 376 U.S. 932, 84 S.Ct. 702, 11 L.Ed.2d 652; Tabor v. Hardwick, 5 Cir., 1955, 224 F.2d 526, cert. denied, 1956, 350 U.S. 971, 76 S.Ct. 445, 100 L.Ed. 843; Adams v. Ellis, 5 Cir., 1952, 197 F.2d 483; Blythe v. Ellis, S.D.Tex., 1961, 194 F.Supp. 139.

4. Flint v. Wainwright, 5 Cir., 1970, 433 F.2d 961; Roy v. Wainwright, 5 Cir., 1969, 418 F.2d 231; Granville v. Hunt, 5 Cir., 1969, 411 F.2d 9.

tion do not overstep the bounds of federal constitutional limitations. Cruz v. Beto, 1972, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263.[5] Moreover, the important thing here is that there is the right subject to substantive standards applying to all civil litigation for a prisoner to be heard on asserted claims. Whether or not the claim is well founded does not have anything to do with prison discipline, although to be sure, status is a factor which may be significant or decisive in determining whether the acts of prison officials are permissible ones and if not what may be the appropriate remedy.

■ Whatever may be the outer contours of the "prison discipline rule", it is apparent that the courts cannot close their judicial eyes to prison conditions which present a grave and immediate threat to health or physical well being. Haines v. Kerner, supra; Woolsey v. Beto, 5 Cir., 1971, 450 F.2d 321; Rocha v. Sowers, 5 Cir., 1972, 454 F.2d 1155; Jackson v. Bishop, 8 Cir., 1968, 404 F.2d 571; Novak v. Beto, 5 Cir., 1971, 453 F.2d 661, 665, rehearing en banc denied, 1972, 456 F.2d 1303. If "the deprivation of basic elements of hygiene" has consistently been held violative of constitutional guarantees (see Novak, supra, 453 F.2d at 665), then certainly practices which result in the deprivation of basic elements of adequate medical treatment, particularly such deprivation as immediately threatens life and limb, would be equally vulnerable.

■■ Additionally, there is an allegation in this complaint that the TDC has threatened punishment if the petitioner files "any more writs against the TDC or its officials." Such an allega-

tion, if proved, would certainly be an appropriate justification for injunctive relief, since prisoner access to the courts is not to be curtailed or restricted by threats, intimidation, coercion or punishment. Novak v. Beto, supra; Johnson v. Avery, 1968, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718; Beard v. Alabama Board of Corrections, 5 Cir., 1969, 413 F.2d 455; Younger v. Gilmore, 1971, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142, aff'd Gilmore v. Lynch, N.D.Cal. (three-Judge), 1970, 319 F.Supp. 105.

■ Finally, there remains a question regarding the procedural approach of the District Court to the present case. We think it the better course in judicial administration in this dynamic field for the District Court to allow the case to be docketed without prepayment of costs and then, if appropriate, dismiss instead of refusing to allow the case docketed even though at that stage it is judicially determined that the complaint does not state a claim on which relief could be granted. As Mr. Justice Douglas has so recently pointed out in his special concurrence in Cruz v. Hauck, 1971, 404 U.S. 59, 64, 92 S.Ct. 313, 316, 30 L.Ed.2d 217, "in forma pauperis aid should normally be granted as a matter of course in order to 'minimize courts' treatment of litigants based upon economic circumstances'." See also, Lockhart v. D'Urso, 3 Cir., 1969, 408 F.2d 354. In this way, although evidentiary hearing might well properly be refused thereafter, any further order in the case would constitute an adjudication on the merits, allowing subsequent identical petitions to be dealt with very easily on res judicata grounds —in addition to the positive advantage of minimizing discrimination in treatment based on wealth.[6]

5. "Federal courts sit not to supervise prisons but to enforce the constitutional rights of all 'persons' which include prisoners. We are not unmindful that prison officials must be accorded latitude in the administration of prison affairs, and that prisoners necessarily are subject to appropriate rules and regulations. But persons in prison, like other individuals, have the right to petition the Government for redress of grievances * * *." 

Cruz v. Beto, supra, 405 U.S. at 321, 92 S.Ct. at 1081.

6. The wisdom of this approach is shown here. Actually, in this case there was no "motion" to dismiss, since the State has never been required to answer the complaint. The District Court dismissed the complaint on his own suggestion.

We thus conclude that since it was error for the District Court to (i) dismiss the complaint on the pleadings without affording the petitioner an opportunity to present evidence to substantiate his very serious allegations it was error to (ii) refuse to allow the petition to be docketed without prepayment of costs, and likewise (iii) to refuse to allow this appeal to proceed *in forma pauperis*. Accordingly, leave to appeal in forma pauperis is hereby granted, the judgment of the District Court is reversed for further consistent action. Although cases of this kind merit a high priority ranking and pro se pleadings are to be judged with a liberality unnecessary for those drafted by skilled counsel, reversal of the Rule 12(b) (6) dismissal does not necessarily forecast a trial. In application of F.R. Civ.P. 12(b) (6), prisoners are not to suffer disadvantage over other supplicants. Of course, neither are they to be advantaged. The case goes back with no more prediction as to the ultimate outcome on the merits than any other case. See Tyler v. Peel Corp., 5 Cir., 1967, 371 F.2d 788, 791–792.[7]

Vacated and remanded.

The State might well have concluded not to run the oft-time risky course of a Rule 12(b) (6) motion but develop facts in proper form for summary judgment or full trial on the merits.

7. These pro se complaints need not be as unmanageable as long thought. With the state answering, the trial court can adapt the discovery techniques (e. g., interrogatories, etc.) to require the petitioner to state facts.