**Terry Ray TAYLOR,**
**Plaintiff-Appellant,**

v.

**M. M. (Hoot) GIBSON et al.,**
**Defendants-Appellees.**

No. 75–1322.

United States Court of Appeals,
Fifth Circuit.

April 1, 1976.

Champ Lyons, Jr., Montgomery, Ala., for plaintiff-appellant.

A. Stewart O'Bannon, Jr., Florence, Ala., for Gibson.

Robert E. Parsons, Birmingham, Ala., for defendants-appellees.

Robert O. Cox, Florence, Ala., for R. C. Barnes & Dr. S. Roberts.

Before GODBOLD, SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

Taylor, a state prisoner, sought to file a Title 42, U.S.C., Section 1983, civil rights suit for monetary damages, seek-

ing the benefit in this connection of the in forma pauperis (IFP) statute, Title 28, U.S.C., Section 1915.[1] The district court, following a somewhat convoluted procedure, dismissed the suit. This Court accepted Taylor's appeal. We find the district court to have erred, and we reverse.

■ Appellant is a felon incarcerated within the Alabama penal system. On May 14, 1974, he presented for filing in the United States District Court for the Northern District of Alabama a lengthy ninety-seven paragraph *pro se* complaint, with supporting affidavits of other prisoners. The complaint primarily alleged medical mistreatment and neglect which arguably amounted to a denial of plaintiff's Eighth and Fourteenth Amendment rights,[2] and asked money damages from various persons who had come into contact with Taylor during three separate stays at the Lauderdale County Jail, Florence, Alabama. The complaint was accompanied by a motion for leave to proceed in forma pauperis and for appointment of counsel. A docket number was assigned the complaint "for record keeping purposes only". The practice of the district court in situations such as this was to refer the matter to a United States Magistrate for recommendations as to whether the plaintiff should be allowed to proceed in forma pauperis. The Magistrate entered an order referring to Taylor's complaint as "a proposed complaint" and requiring factual responses from the various defendants. Responses were filed. Plaintiff tendered additional affidavits in support of his allegations. He also filed memoranda of law in response to two of the factual responses. Plaintiff renewed, on September 16, 1975, his motion for appointment of counsel and complained of his inability due to his confinement to obtain affidavits of witnesses, and evidence in support of his allegations.

In the meantime, on the basis of the complaint and factual responses, the Magistrate determined that there could be no § 1983 liability with respect to some of the defendants, and that Taylor's allegations with respect to the others were "beyond belief". He therefore recommended that the opportunity to proceed in forma pauperis be denied plaintiff, and that the action be dismissed. The district court entered an order approving and adopting the recommendations of the Magistrate. The action was dismissed. A motion to vacate the dismissal was denied. A subsequent motion for leave to appeal in forma pauperis was denied by the district court on grounds that the proposed appeal would be totally frivolous and without merit. Thereafter we granted plaintiff's *pro se* application to appeal in forma pauperis and appointed counsel.

The allegations upon which Taylor's charges are predicated stem from occurrences which happened during three separate periods of incarceration at the Lauderdale County Jail. The incidents will be identified, for our purposes, as the infected foot, the eye injury, and the postoperative mistreatment. Without attempting to capture the full extent of the graphic and gruesome complaint filed by Taylor, it is necessary to recount

---

1. Title 28, U.S.C., Section 1915, provides, in part, that;

   "(a) Any court of the United States may authorize the commencement, prosecution, or defense of suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

   An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

\*    \*    \*    \*    \*    \*

   (d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."

2. The Eighth Amendment prohibition against cruel and unusual punishment was made expressly applicable to the states through the due process clause of the Fourteenth Amendment in *Robinson v. California,* 1962, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758.

in bare outline the charges presented. In chronological order the incidents as alleged by Taylor may be sketched as follows:

1. The Infected Foot. (August 3, 1971–August 25, 1971). Taylor was arrested by Lauderdale County deputies on an escape charge, and jailed. Shortly thereafter a "red spot" appeared on his foot, and it began to swell. Plaintiff repeatedly requested to various deputies, and through them to the sheriff, that he be provided medical care. Despite intense pain and a very badly infected foot, it was not until August 12 that plaintiff was taken to see a doctor. The doctor instructed that plaintiff be admitted to the Eliza Coffee Memorial Hospital. Taylor was taken to the hospital, admitted, and locked in a room of the hospital's mental and alcoholic section, despite the lack of facilities there to properly care for his foot.

The next day plaintiff was moved for a short time, pursuant to his doctor's orders, into the main section of the hospital. The Sheriff had him returned to the mental and alcoholic section. For the next several days, due to the conflicting orders of his doctor and the Sheriff, he was shuffled back and forth between the mental and alcoholic section and the main section of the hospital. On August 19, plaintiff, because of fear that Sheriff Gibson was going to have him taken back to jail despite his not being released from the hospital, escaped from the main section of the hospital. He was recaptured and taken to jail, where he alleges he was denied medical attention and basic comforts, such as a mattress and clean linen. On August 23 appellant plead guilty to charges against him, in the hope of thereby obtaining medical care. The Sheriff was ordered by the judge to see that Taylor was immediately taken to the doctor, but it was not until the next day that he was taken to have his foot attended to. This followed an express order from the judge. The following day Taylor was removed to the Mount Meigs Medical facility of the Alabama prison system.

Taylor alleges in this and all other incidents that Sheriff Gibson and certain named deputies inflicted cruel and unusual punishment by depriving him of medical attention. As to this incident he further charges that defendant-appellee W. C. Barnes, the hospital administrator, agreed with Sheriff Gibson or acquiesced in the Sheriff's directions by putting him in the alcoholic and mental section of the hospital, contrary to his doctor's orders, all of which constituted cruel and unusual punishment.

2. The Eye Injury. (September 23, 1973–October 4, 1973). Taylor was again incarcerated in the Lauderdale County Jail September 23, 1973 and placed alone in a cell. He alleges that Sheriff Gibson and his deputies knew of his tendency to experience fainting spells. On September 24 appellant had one of these spells. He asked to be taken to a doctor, or to have another prisoner put in the cell with him to help in case of another spell, and to prevent, if possible, any injury he might suffer. On September 27 Taylor had a spell, fainted, fell and struck and injured his good eye.[3] He was taken, blinded, to the Eliza Coffee Memorial Hospital. There Dr. Roberts examined Taylor's eye, and stated according to Taylor that he would be admitted to the hospital. Dr. Roberts then called Sheriff Gibson to discuss the situation with him. Following this conversation, Dr. Roberts treated Taylor very badly, and refused him both admission to the hospital and pain medication. Taylor was then taken back to the jail where he was left, in his injured condition, handcuffed alone in a cell for several hours. He was re-examined that afternoon by Dr. Roberts at the latter's clinic, although the only treatment afforded him was eye drops. His requests for pain medication were again denied. During the next week Taylor was taken to Dr. Roberts' office several times, although he received no medication or treatment other than the

3. Taylor had lost the sight of his other eye in a childhood accident.

eye drops. Taylor suffered several more fainting spells, but never received adequate medical attention for the spells or for a head cut he received as a result of an attendant fall.

On October 4 Taylor was again transferred to Mount Meigs. He states that a Dr. Young told him that if his eye had been properly treated by Dr. Roberts, he, Taylor, would have recovered more of his eyesight than he ultimately did.

Taylor, in connection with this incident, alleges not only that Sheriff Gibson and the deputies deprived him, in a variety of ways, of proper medical care but that Dr. Roberts conspired with the Sheriff to keep him from the hospital, where he could have received adequate and proper treatment resulting in greater recovery of eyesight.

3. *Postoperative Mistreatment.* (March 11, 1974—April 11, 1974). On March 11, 1974, Taylor was released from the Eliza Coffee Memorial Hospital to the custody of the Lauderdale County Jail. While in the hospital Taylor had undergone a major operation.[4] He was in severe pain due to the after effects of this operation and a subsequent internal infection. Taylor alleges he was denied proper and sanitary bedding in the jail. He further charges that several named deputies refused to give him pain medicine at times specified by his doctors. The appellant suffered further physical distress caused by the internal infection, but was not properly treated. Taylor was re-admitted to the hospital for several days in early April. Upon his release to the jail Sheriff Gibson refused to see that Taylor was given prescribed pain medicine and refused to put Taylor in a bathtub three times a day, as ordered by his doctors. On April 11 "Plaintiff had to plead guilty to three

criminal charges against him so he would be brought to the Alabama Penal Institution where he could get propler [sic] medical attention".

## CONTROLLING PRINCIPLES

■ We begin our consideration of the law of this case by reiterating our refusal to examine the merit of any of appellant's factual allegations. We recognize the hardships a § 1983 suit may impose upon persons acting for a state. We are aware that a large number of prisoner suits are predicated primarily upon the prisoner's boredom and resentment of authority, and upon investigation are found to lack substantial basis in fact.[5] But judges must balance their misgivings and skepticism about the usual § 1983 prisoner suit against the cold knowledge that in certain instances injustices to prisoners occur in jails and prisons, some of which violate constitutional mandates. Sometimes practices are uncovered shocking even to those most unsympathetic to prisoner rights. Section 1983 in such instances offers the only practical remedy available to the prisoner in such a system; it is the responsibility of the courts to be sensitive to possible abuses in order to ensure that prisoner complaints, particularly *pro se* complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

■ The Magistrate in this case, as outlined above, filed a recommendation determining, on the basis of the complaint, attached affidavits, and "factual responses", that, as a matter of law, Title 42, U.S.C., Section 1983 could not be

---

4. Taylor was shot by his brother at the latter's home following an armed robbery perpetrated elsewhere by appellant. The operation was to correct the damage done Taylor's back and various internal organs by the gunshot wound.

5. "Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain.

The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books, and mailing privileges the temptation is especially strong". *Jones v. Bales,* N.D.Ga.1972, 58 F.R.D. 453, 463, aff'd per curiam, 5 Cir. 1973, 480 F.2d 805.

the basis for an action against some defendants, and that with respect to other defendants the allegations of the appellant were "beyond belief". He recommended that the right to proceed in forma pauperis be denied, and that the action be dismissed. The district court approved and adopted the recommendations of the Magistrate, and the complaint was dismissed, ostensibly under the provision of Title 28, U.S.C., Section 1915(d), that the court may dismiss an IFP case "if satisfied that the action is frivolous or malicious".[6] The district court, in an order dated October 11, 1974, denying plaintiff's motion to appeal IFP, stated that "[b]ased upon the facts which this court has considered, if this case were tried, this court would be compelled to set aside any verdict in favor of plaintiff. The court is convinced that the proposed appeal is frivolous and without merit, and that a continuance of this action would be a complete waste of time."

We have recently determined under what circumstances Title 28, U.S.C., Section 1915(d), may be used as the basis for the dismissal of a § 1983, *pro se,* prisoner suit which the prisoner sought to bring under the IFP statute. Judge Bell in *Watson v. Ault,* 5 Cir. 1976, 525 F.2d 886, enunciated principles which we think control our action here. The Court's detailed discussion in *Watson* is here briefly sketched so that we may relate it to the facts before us.

*Pro se* prisoner complaints must be read in a liberal fashion and should not be dismissed unless it appears beyond all doubt that the prisoner could prove no set of facts under which he would be entitled to relief. *See particularly Haines v. Kerner,* 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652; *Watson v. Ault, supra; Campbell v. Beto,* 5 Cir. 1972, 460 F.2d 765. A *pro se* prisoner complaint is to be read by "less stringent standards than formal pleadings drafted by lawyers". *Haines v. Kerner, supra,* 404 U.S. at 520, 92 S.Ct. at 596, 30 L.Ed.2d at 654, quoted in *Watson v. Ault, supra,* 525 F.2d at 891.

This liberal reading of prisoner complaints extends necessarily to matters of both law and fact. Allowing the benefit of the doubt to a *pro se* prisoner complaint, *Watson* adopted for the test of frivolity for Section 1915(d) purposes the principle enunciated by the Supreme Court in the context of criminal appeals in *Anders v. California,* 1967, 388 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493, 498, that test being simply a determination of whether the complaint is "without arguable merit". *Watson v. Ault, supra,* at 892. This "test or standard should be applied in the trial court

---

**6.** There was some doubt expressed by counsel at oral argument and in their briefs as to the propriety and effect of the district court's dismissal of Taylor's complaint under § 1915(d) at a time when permission to proceed IFP under § 1915(a) had not yet been granted. Assuming pauper status, we here take the opportunity to reiterate that:

> "We think it the better course in judicial administration in this dynamic field [prisoner § 1983 suits] for the District Court to allow the case to be docketed without prepayment of costs and then, if appropriate, dismiss instead of refusing to allow the case docketed even though at that stage it is judicially determined that the complaint does not state a claim on which relief could be granted. As Mr. Justice Douglas has so recently pointed out in his special concurrence in *Cruz v. Hauck,* 1971, 404 U.S. 59, 64, 92 S.Ct. 313, 316, 30 L.Ed.2d 217, "*in forma pauperis* aid should normally be granted as a matter of course in order to 'minimize courts' treatment of litigants based upon economic circumstances'." See also, *Lockhart v. D-Urso,* 3 Cir., 1969, 408 F.2d 354. In this way, although evidentiary hearing might well properly be refused thereafter, any further order in the case would constitute an adjudication on the merits, allowing subsequent identical petitions to be dealt with very easily on res judicata grounds—in addition to the positive advantage of minimizing discrimination in treatment based on wealth."

*Campbell v. Beto,* 5 Cir. 1972, 460 F.2d 765, 768. In *Watson v. Ault,* 5 Cir. 1976, 525 F.2d 886 at 891 we were more specific:

> "[w]here the in forma pauperis affidavit is sufficient on its face to demonstrate economic eligibility, the court should first docket the case and then proceed to the question presented under Section 1915(d) of whether the asserted claim is frivolous or malicious".

but in terms of the arguable substance of the claim presented, both in law and in fact". *Watson v. Ault, id.*

The district court adopted determinations in the instant case that Taylor's complain was deficient legally and factually. A liberal reading of the complaint indicated that the court erred in both determinations.[7]

## LEGAL ISSUES

The Magistrate's recommendations, adopted by the court, determined that Watson's complaint was deficient as a matter of law in its allegations against the eye doctor, Dr. Roberts, the hospital administrator, Mr. Barnes, and Sheriff Gibson. This was erroneous.

The Magistrate's report concluded "[t]he only basis for Plaintiff's assertion of liability against Dr. Roberts and Mr. Barnes is Plaintiff's allegation that Plaintiff did not receive proper medical treatment while he was a patient at Eliza Coffee Memorial Hospital, Florence, Alabama. 42 U.S.C. § 1983 does not authorize a cause of action based upon malpractice by a physician or a hospital". If any acceptance is given to the complaint, as it must be, this appears to be a misconception of the law or a misunderstanding of the facts alleged.

Dr. Roberts is a private physician, an eye doctor, who practices in Florence. He would have us approve dismissal of this case, at least as it applies to him, on the basis that he was involved in no state action, or because, conceding state action, "mere malpractice will not support a section 1983 claim".

■ Taylor's complaint read expansively alleges that Dr. Roberts denied plaintiff the facilities of the Eliza Coffee Memorial Hospital and treatment for his pain solely because of his status as a prisoner. This denial is said to have followed a telephone conversation between Sheriff Gibson and Dr. Roberts.[8] It is now well established that private persons may be sued under Section 1983 when they are acting in conspiracy or collusion with state officials. *United States v. Price,* 1966, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267; *Fulton v. Emerson Electric Co.,* 5 Cir. 1969, 420 F.2d 527, cert. denied 1970, 398 U.S. 903, 90 S.Ct. 1689, 26 L.Ed.2d 61; *Gomez v. Fla. State Employment Service,* 5 Cir. 1969, 417 F.2d 569. Taylor alleged facts which if true are supportive of a finding of conspiracy authorizing recovery under Section 1983. While characterized by the defense as "mere malpractice", the acts alleged imply a deprivation of medical care to an extent that sufficiently developed may reach the infliction of cruel and unusual punishment in contravention of the Eighth Amendment. *See, Campbell v. Beto,* 5 Cir. 1972, 460 F.2d 765.

The situation of Mr. Barnes, the hospital administrator, is similar in many respects to that of Dr. Roberts. Cruel and unusual punishment is alleged in that Taylor was kept from a proper hospital room, and detained in the mental and alcoholic section of the hospital where he could not receive proper treatment, through the conspiracy and collusion of Mr. Barnes and Sheriff Gibson. Taylor's assertions seem particularly insubstantial with respect to Mr. Barnes as it appears, on the basis of his factual response, that he was in the hospital himself, recovering from a heart attack, at the time of the infected foot incident upon which plaintiff's assertions as to him are based. It may be that Taylor's claims as to Barnes may finally be disposed of on a motion for summary judgment under F.R.Civ.P. Rule 56.[9] But dismissal of the complaint without factual development was an impermissible determination of its credibility.

---

7. No blame attaches to the district court for failure to anticipate *Watson v. Ault.*

8. Both Sheriff Gibson and Dr. Roberts denied in their factual responses that this conversation took place.

9. Appellant's counsel at oral argument brought out that Taylor's complaint was drawn without the aid of legal counsel and contained numerous "shotgun" allegations which responsible counsel would probably not have included within the complaint.

██ Taylor's assertions of Sheriff Gibson's liability appear to have been dismissed below because they were predicated upon a theory of *respondeat superior*, and thus could not support a Section 1983 claim. This determination will not withstand examination. Study of the complaint shows that Sheriff Gibson is charged both with derivative liability from the actions of his deputies, and with numerous direct actions involving deprivations of plaintiff's constitutional rights. Moreover assertions of insulation from liability because Section 1983 does not permit derivative, *respondeat superior*, liability are questionable, and, at best, overbroad. It is true that some cases hold that absent overt acts, Section 1983 does not authorize recovery of monetary damages through *respondeat superior*, see, e. g., *Johnson v. Glick*, 2 Cir. 1973, 481 F.2d 1028; *Adams v. Pate*, 7 Cir. 1971, 445 F.2d 105, but this Circuit has carved out some exceptions to this rule. A sheriff may be held liable for the actions of his appointed deputies, over whom he has control, in certain circumstances. *See*, e. g., *Madison v. Gerstein*, 5 Cir. 1971, 440 F.2d 338. Even more to the point this Court has established in several fairly recent cases that "prison administrators may under certain circumstances be held vicariously liable for the acts of their subordinates". See *Carter v. Estelle*, 5 Cir. 1975, 519 F.2d 1136; *Holland v. Connors*, 5 Cir. 1974, 491 F.2d 539; *Parker v. McKeithen*, 5 Cir. 1974, 488 F.2d 553, cert. denied, 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65; *Tuley v. Heyd*, 5 Cir. 1973, 482 F.2d 590. At this stage it is simply impossible to determine whether or not Taylor's broad allegations will support derivative liability under a *respondeat superior* theory.

## FACTUAL ISSUES

██ The district court adopted the Magistrate's report and dismissed the complaint on the basis that appellant's allegations were "completely beyond belief". This involved credibility choices between the allegations of Taylor's complaint, and supporting prisoner affidavits on the one hand and the defendants' factual responses on the other.[10] Taylor was deprived of a hearing at which to present evidence in support of his allegations. The lower court made credibility choices without hearing witnesses testify, without observing their demeanor or hearing their testimony subjected to cross-examination. Factual disputes are not so resolved under our system of jurisprudence. Factual allegations may not be brushed aside as "beyond belief" by examining a complaint, affidavits and factual responses. Taylor must have his day in court.

██ Appended to the "factual response" of Sheriff Gibson, and brought to our attention at oral argument, is a portion of the exceedingly long and weary criminal record of Terry Ray Taylor.[11] It is evidence that Taylor has been a problem for Lauderdale County and its law enforcement officials for many years. But it may be argued that while plaintiff's criminal record sheds some light on his character it also provides some animus to jailers to mistreat him. All this is in any case beside the point. Enlightened concepts of justice will not permit denial to Taylor of the right to

---

10. The Magistrate based his recommendation of the dismissal of the complaint on (1) the legal inapplicability of § 1983 to allegations concerning the doctor, the hospital administrator, and the sheriff discussed *supra*, and (2) a determination that plaintiff's allegations as to other defendants were "completely beyond belief". We attach no significance to the fact that only the allegations regarding the deputies were held "beyond belief"; we suspect rather that the allegations regarding the other three defendants would have appeared just as unbelievable if the Magistrate had not concluded § 1983 to be legally unavailable as a basis for their liability.

11. Taylor's criminal record, as appended to the Sheriff's response, includes approximately 99 arrests since 1961, and convictions for numerous offenses including driving without a proper license, public drunkenness, speeding, passing bad checks, and a host of misdemeanors as well as such felonies as burglary and robbery.

sue for a redress of grievances under the Constitution and laws of the United States simply because his past may indicate that he is a rogue and a scoundrel, unworthy of belief.

Circumstances may occur in which a district court could utilize Title 28, U.S.C., Section 1915(d), to dismiss a prisoner complaint as frivolous, even though legally and facially sufficient, because of a lack of factual substance.[12] An example would be a Section 1983 prisoner suit predicated upon allegations of a denial of access to the courts despite the existence of previous lawsuits evidencing such access. *Irwin v. Burson*, 5 Cir. 1967, 389 F.2d 63. The district court may, of course, consider its own records to determine whether a suit may be dismissed under Section 1915(d) as frivolous or malicious despite the complaint being facially adequate. *Conway v. Oliver*, 9 Cir. 1970, 429 F.2d 1307; *Williams v. Field*, 9 Cir. 1968, 394 F.2d 329, cert. denied, 393 U.S. 891, 89 S.Ct. 213, 21 L.Ed.2d 171; *Irwin v. Burson, supra*. A complaint conflicting with facts of which the district court may take judicial notice might also properly be dismissed under Section 1915(d).

We have alluded in other decisions to the desirability of the district courts developing imaginative and innovative methods of dealing with the flood of prisoner complaints and suits, most of which are brought under Section 1983 and filed in forma pauperis.[13] *See*, generally, *Watson v. Ault, supra*, 525 F.2d at 892; *Hardwick v. Ault*, 5 Cir. 1975, 517 F.2d 295 at 298. In *Watson v. Ault* the Court specifically approved the use of questionnaires to aid the court in determining the substance of Section 1983 claims. In *Hardwick v. Ault, supra*, the Court noted the possibility of "special reports" being requested of the state attorney general addressed to the allegations of the plaintiff; such a special report appears to be akin to the "factual responses" requested of the defendants in the instant case. The questionnaire, special report, and request for "factual responses" all appear to be appropriate methods by which district courts have attempted to narrow and require specification of the issues raised. They are perhaps useful and valid tools and their use is not challenged here. We mention them as examples of the approach of some courts to this problem.[14]

We have no occasion here to discuss the merits of this procedure.[15] We simply note that it is analogous to the procedures for use of "staff law clerks" discussed in a recent Federal Judicial Center Report entitled "Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts". (Tentative Report, released about January 30, 1976).

We reverse the district court and remand with directions that the complaint of Terry Ray Taylor be filed in forma pauperis as it is not "without arguable merit". The case should then proceed under the Federal Rules of Civil Procedure. Of course we intimate no view as to either the appropriate ultimate method of disposing of Taylor's suit or its outcome.

Reversed and remanded with directions.

12. Cf. *Watson v. Ault, supra*, 525 F.2d at 891: "Section 1915(d) allows a measure of control by the district court over such suits by allowing the court to dismiss a case where it is satisfied that an action is frivolous or malicious. The keystone of such dismissal is the court's exercise of discretion under Section 1915(d). The focal point of that discretion is the court's duty to satisfy itself that the action is frivolous or malicious. In making that determination, unless it appears as a matter of law, *it necessarily follows that the court must ascertain whether there is a factual basis for the petitioner's suit*." (Emphasis added).

13. Statistics on the numbers and growth of civil rights suits filed within federal courts by state prisoners, derived from the 1975 Report of the Director of the Administrative Office of the United States Courts are set out in *Watson v. Ault, supra*, 525 F.2d at 890 n. 3.

14. The Northern District of Alabama along this line appears to follow a practice of directing its magistrates to make recommendations to the district judge as to whether prisoner civil rights cases should be permitted to proceed in forma pauperis.

15. Cf. *Carter et al. v. Thomas, Clerk, U. S. District Court, etc.*, 5 Cir. 1976, 527 F.2d 1332 [decided March 5, 1976].