Ms. Zenovia **BRYANT**

v.

**ST. HELENA PARISH SCHOOL BOARD
and Regina Coeli Child
Development Center.**

Civ. A. No. 80–182–A.

United States District Court,
M.D. Louisiana.

March 30, 1983.

Murphy W. Bell, Baton Rouge, La., for plaintiff.

W. Hugh Sibley, Asst. Dist. Atty., Greensburg, La., for St. Helena P.S.B.

Stephen K. Peters, Baton Rouge, La., for Regina Coeli Development Center.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

### A. FINDINGS OF FACT

1. In 1973 the defendant, St. Helena Parish School Board, began participating in the "head start" program, funded by a federal (Department of Health, Education & Welfare) grant, the purpose of which was to provide educational, medical and social services to poor children.

2. At its meeting of July 16, 1977, the School Board authorized plaintiff, Zenovia Bryant, to be hired as a teacher in this program for the 1977–78 school year.

3. At its November 7, 1977 meeting, the School Board created an agency, the St. Helena Parish Head Start Board, to which it delegated all operational responsibility for the head start program. The School Board specified the membership of the Head Start Board (three of whom are members of the School Board) and also entered a written contract with the Head Start Board which provided, *inter alia,* that the Head Start Board would have primary responsibility for:

"... implementing personnel policies. Overall responsibility for appointing and/or removing staff and for working with the program director in supervising and evaluating performance of staff."

4. The Head Start Board adopted bylaws and a formal personnel policy which included the following provisions:

"I. LENGTH OF WORK WEEK AND WORK DAY

All employees work five days per week, Monday through Friday. All employees except the janitor and bus driver will work from 8:30 A.M.—3:30 P.M. ...

Each employee *must* indicate on his time sheet the time of his arrival at the beginning of the day and the time of his departure at the end of the day....

VI. STAFF EVALUATION

\* \* \* \* \* \*

Employees who have performed satisfactorily throughout the program year will be rehired for the next term should they indicate a desire to retain their jobs. There is no provision for tenure offered by the agency.

VII. RESIGNATION AND TERMINATION

\* \* \* \* \* \*

Employer termination of an employee can occur for the following reasons:

1. willful neglect of duty
2. incompentency
3. dishonesty
4. immorality
5. attitude

It is the responsibility of the Center Director and the Head Start Board to dismiss any employee who, because of bad attitude or work record, proves not to be an asset to the program. Discrimination will not be a factor in employee dismissals."

5. The Head Start Board entered a written contract with defendant, Regina Coeli Child Development Center, a private corporation domiciled in Covington, Louisiana, referred to in the agreement as the "grantee." The "grantee" secured funds for operation of the program from the appropriate federal agency and turned the funds over to the Head Start Board for operational expenses of the program. All financial aspects of the program, including payroll, were retained directly by the School Board, and all employees were paid by School Board checks.

6. The Head Start Board created a "Parents Policy Committee" as an advisory agency, consisting of parents of some of the children involved in the Head Start Program.

7. During the period from October, 1979, through early January, 1980, plaintiff, Zenovia Bryant, became involved, as a member of a citizens group, in publicly charging irregularities, including vote buying, in an election in St. Helena Parish for the School Board.

8. On at least two occasions in late 1979 or early 1980, the director of the Head Start Program, Linda Smith, who was plaintiff's immediate superior, verbally advised plaintiff that her job performance was unsatisfactory, specifically mentioning, among other items, coming to work late, unexcused absences and leaving her classroom children unattended. In mid-January, 1980, the director recommended to the Head Start Board that plaintiff and another employee be dismissed, and she submitted a written list of complaints regarding their job performance. The director's list of complaints regarding plaintiff reads as follows:

*Zenovia Bryant,* 12–11–79—Ms. Bryant was very upset at 8:30 A.M. when I arrived at work. She wanted to know why I wasn't here at 8:00 A.M. to answer the phone. I told her that I didn't get to work until 8:30 A.M. She then told me she was going to take off ½ day.

12–13–79—At 8:45 A.M. I called Tat Spears's home to have her go next door to see if Z.B. was coming to work. She checked and called me back and told me Z.B. was coming.

She arrived at 9:00 A.M. I asked her to call me when she was going to be late so I wouldn't have to call a sub. teacher. She then told me she didn't have a phone and she couldn't call.

1–3–80—Z.B. did not show up for work or call in this morning. I waited until 8:50 A.M. in case she had car trouble. I called the neighbors house and they told me she was in Baton Rouge with her mother. She didn't call this day.

1–4–80—Did not call in again.

1–9–80—Z.B. came in this morning at 9:00 A.M. No excuse why she was late. (Witnesses, L. Smith & M. Seals)

1–10–80—Z.B. came in today at 8:50—no excuse. (Witnesses, L. Smith & D. Self)

1–11–80—I left the school at 8:45 A.M. to run part of the bus route (bus was broke today). Z.B. had not arrived at school when I left. When I got back she had signed in at 8:40. (Witnesses, L. Smith & B. Brumfield)

1–11–80 (Friday)—I asked Z.B. were they going to their classrooms today. This was at 9:45. She told me she would go as soon as the room warmed up. The correct time she went to her classroom was nap time, at 12. She had no class this day.

1–14–80—Z.B. did not call in this morning. She sent her neice (sic) to work in her place at 9:00 A.M. She said she had been trying to call but she couldn't get anyone to answer.

1–14–80—Both teacher and aide were off this day.

Z.B. has missed a total of 14 days from Sept. 1, 1979 thru January 15, 1980. A total of 8 times to be late.

She leaves the classroom without a teacher in it, often.

9. On January 21, 1980, the Head Start Board held a special meeting at which all employees of the program were discussed and plaintiff was informed that the director had made complaints concerning her job performance and had recommended her dismissal. At the meeting plaintiff appeared and the chairman read to her the specific complaints made by the director (who was not present). The minutes of the executive session read in part as follows:

"Mr. Tiner requested that Mr. Speed notify Ms. Zenovia Bryant to come before the board. She was asked to tell what was wrong at the center.

Ms. Bryant wanted to know what complaints had been made. Mr. Speed read the documented accusations made against Ms. Bryant.

Ms. Bryant spoke to the board, stating that she had not failed to call when she was going to be late for work.

Ms. Bryant was at this time away from the center. She told the board that she did not tell the director that she was coming to the school board office.

Ms. Bryant stated that she would not resign from her job, but the board could fire her."

The board adjourned without action after hearing plaintiff.

10. On January 29th plaintiff was informed that the Head Start Board and the Head Start Parents Policy Committee would meet on January 30th and that she should appear before the Parents Policy Committee "to defend herself."

11. The Head Start Board held another special meeting on January 30, 1980 at which it adopted a grievance procedure for discharged employees and adopted a motion:

"...That Zenovia Bryant and Anita Spears be dismissed January 31, 1980, as teacher and teacher aide respectively for

the St. Helena Head Start, based on willful neglect of duty, work performance and work attitude. This dismissal would be contingent on the Parent Policy Committee's approval..."

12. Plaintiff was present at the meeting of the Parents Policy Committee on January 30, 1980, as were the director and several other employees of the program. The Parents Policy Committee heard from plaintiff and the other persons present and approved the dismissal.

13. On January 31, 1980, plaintiff was notified in writing that the Head Start Board and the Policy Committee had dismissed her "because of your bad attitude and work record," effective February 1, · 1980. The letter advised plaintiff that if she desired to appeal, a copy of a grievance procedure was enclosed.

The grievance procedure provided that any employee may appeal a dismissal to the "grantee," Regina Coeli, for a hearing.

On February 22, 1980, plaintiff requested that defendant, Regina Coeli, conduct a hearing on her dismissal.

14. On March 26, 1980, pursuant to plaintiff's request, the Head Start Board furnished her a written, detailed "specification" of the reasons for her dismissal, which were substantially the same as the complaints that had previously been read to her but added, "You threatened bodily harm to another staff member, Mable Seals, on Jan. 21, 1980," and "You threatened to close the Head Start Center down if you were dismissed from your job as teacher when talking on the phone to Mr. James Tanner, President of the Policy Committee, on Jan. 30, 1980."

The defendant, Regina Coeli, scheduled a hearing on plaintiff's appeal in April, 1980, and forwarded to plaintiff a written procedure which would govern the proceedings:
MEMORANDUM OF GROUND RULES FOR APPEAL HEARING This committee will be convened for the purpose of considering the decision of the St. Helena Board of Directors and the Policy Committee in dismissing Mrs. Zenovia Bryant from the position of teacher.

Our committee will sit and hear evidence to be presented by both sides, but will be generally operating under the precept of law well recognized in Louisiana that the decision of a lower court or commission should be upheld unless it is manifestly erroneous or unless we find that there has been an abuse of the fair discretion vested in such a body, in this case the St. Helena Head Start Board of Directors and Policy Committee.

Both Mrs. Bryant as well as the Director, Board, and Policy Committee of said Head Start Center will have an opportunity to present written memoranda as well as witnesses to be heard. Copies of written memoranda submitted to the committee for consideration shall be served contemporaneously upon the opposing party. That is, any written memoranda submitted to this committee by the Board of Directors and Policy Committee shall be at that same time served upon Mrs. Bryant by deposit in the United States mail, postage prepaid. By like token, any written memoranda to be submitted by Ms. Bryant to this committee through the Chairman should be served upon Mr. Polk Tiner and Mr. James Tanner by deposit to them in the United States mail, postage prepaid.

Copies of all written memoranda to be submitted to the Committee must be submitted in eleven duplicate counterparts. It is suggested that if memoranda are to be submitted in advance of the hearing, that they should be submitted no later than April 3, although if either side wishes to make written memoranda following the hearing, they will be at liberty to do so, in which event we will delay our decision for a period of ten days, and written memoranda must be submitted no later than five days following the hearing, or the 15th day of April.

The hearing shall be open to the public, although witnesses to be called by either side shall be sequestered and not present during the testimony of other witnesses. It is suggested that both sides should give the Chairman the number of persons they

feel may be in attendance by April 3rd so that if our meeting room should prove inadequate to take care of the number of persons in attendance, another meeting place may be secured.

Both parties appearing before the committee are invited to be assisted by counsel. Counsel is not, however, required should either party elect to appear without counsel. Counsel must not necessarily be of the legal profession although if either party so elects, the fees thereof shall be defrayed at the expense of the person so represented.

No official transcript will be made of the proceedings at the committee meeting, although either or both parties are invited to make tape recorded transcripts thereof and may reduce the same to writing at a later time at their expense, with the provision that such transcriptions later reduced to writing must be proofread and approved by the committee Chairman.

At the conclusion of proceedings and after the submission of all memoranda, a decision herein shall be by majority vote. The Chairman of the committee shall not vote except in order to break a tie.

15. On April 9, 1980, plaintiff wrote to the Chairman of the Regina Coeli Child Development Center appeal committee requesting that the hearing be continued and that the hearing site be changed from Covington to St. Helena Parish. She concluded:

"If you do not wish to do this then my Attorney will file Suite (sic.)."

16. Plaintiff declined to attend the hearing but it nevertheless proceeded in her absence. Witnesses were called and testified and the "grantee" committee affirmed plaintiff's dismissal.

17. Plaintiff then instituted this action.

18. Plaintiff's activities regarding the vote buying charges were not mentioned in any complaint made against her nor were they discussed at the January 21, 1980 meeting of the Head Start Board, at the January 30, 1980 meeting of the Head Start Board, at the January 30, 1980 meeting of

the Parents Policy Committee or at the April, 1980 hearing of the appeal.

## B. CONCLUSIONS OF LAW

1. Jurisdiction is alleged in this court under 28 U.S.C. § 1343. Plaintiff originally claimed violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986, of Title VII of the Civil Rights Act of 1964 (P.L. 88–352, 42 U.S.C. § 2000e), as well as the First, Fifth, Fourteenth and Fifteenth Amendments and a violation of an August 25, 1971 order of this court previously issued in Civil Action 1,068, entitled *Hall v. St. Helena Parish School Board.* At the beginning of the trial of this action, however, plaintiff abandoned all claims except that she was denied her right to procedural due process under the Fourteenth Amendment by the manner of her dismissal and that she was dismissed because of her exercise of the right of free speech guaranteed to her by the First Amendment. These are claims falling within the reach of 42 U.S.C. § 1983 and this court has jurisdiction under 28 U.S.C. § 1343.

### THE FREE SPEECH CLAIM

2. A public employee, even one who is not tenured and could be discharged for no reason, may nevertheless demand reinstatement if he proves that protected conduct under the First Amendment was a substantial or motivating factor in the decision to discharge him. *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Slochower v. Board of Education,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). While plaintiff's activities in bringing alleged voting irregularities to public attention constituted an exercise of free speech rights which are protected by the First Amendment, she bears the initial burden of proving that the constitutionally protected conduct was a substantial factor in

the decision to fire her. *Mt. Healthy City School District v. Doyle,* IBID; *Hillis v. Steven F. Austin State University,* 665 F.2d 547 (5th Cir.1982) cert. den. —— U.S. ——, 102 S.Ct. 2906, 73 L.Ed.2d 1315.

3. Here there is no evidence to support plaintiff's claim that she was discharged because of the exercise of her freedom to speak out regarding voting irregularities. There is a coincidence of timing, in that her dismissal came shortly after she engaged in these activities. The timing is suspicious. Suspicions are insufficient, however, to amount to proof by a preponderance of the evidence. The evidence is unrebutted that plaintiff's public activities were not discussed at any meeting of the Head Start Board or of the Parents Policy Committee; and there is no evidence indicating that the director, who made the recommendation to discharge plaintiff, was even aware of her activities. On this record the court concludes that plaintiff's constitutionally protected conduct played no part in the decision by the Head Start Board, acting on behalf of the St. Helena Parish School Board, to dismiss plaintiff.

## THE PROCEDURAL DUE PROCESS CLAIM

4. Plaintiff had no written contract of employment regarding her teaching position. We look to the terms of plaintiff's employment in order to determine whether she had a property interest for which she could demand procedural due process under the Fourteenth Amendment, because such property interests are not created by the Constitution but come from an independent source, such as state law. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

5. Here plaintiff was hired for the school year 1979–80 and the personnel policy adopted by the Head Start Board gave her a reasonable expectancy of continued employment through the end of the school year, and beyond. Under these circumstances she clearly had property interests in her employment that are safeguarded by the due process clause of the Fourteenth Amendment and she could not be summarily discharged during the term of her employment, *Connell v. Higginbotham,* 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971); *Wieman v. Updegraff,* 344 S.Ct. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952).

6. Procedural due process, while an elastic, rather than a rigid concept, demands, at least, that before one may be permanently deprived of a property interest, he must be afforded an opportunity for some kind of hearing. *Board of Regents v. Roth, supra; Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). In some instances, such as revocation of parole, due process may require written notice of the claimed violations, disclosure of the evidence against one, opportunity to be heard in person and to present witnesses and evidence, the right to confront and cross examine adverse witnesses, an impartial hearing body and a written statement of findings and reasons for the action taken. *Morrisey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In some instances due process demands notice and an opportunity to be heard before any deprivation of the property interest. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The Supreme Court has held, however, that a public employee, even an employee who has tenure and can be discharged only for cause, may be dismissed without a pre-termination hearing, provided that an opportunity for an adequate post-termination hearing is afforded. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). See also, *Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

7. In this case, plaintiff was afforded an informal hearing before the Head Start Board on January 21, 1980 and another informal hearing before the Parents Policy Committee on January 30, 1980, both prior to her termination. Her notice of those hearings was, in each case, admittedly short, but plaintiff has lodged no specific complaint regarding the shortness of the

notice. Instead it is plaintiff's position that she never had an opportunity to be heard. The court finds to the contrary. It is, however, unnecessary to determine the adequacy of those hearings from a procedural due process viewpoint because the post-dismissal appeal process was completely adequate to satisfy due process. *Arnett v. Kennedy, supra.* The procedure outlined by the Regina Coeli Child Development Center procedure gave plaintiff notice of the hearing and gave her a fair opportunity to oppose evidence presented against her and to present evidence in her own behalf. The fact that it occurred after her dismissal does not cause an impairment of her procedural rights under the Fourteenth Amendment.

8. Plaintiff simply declined to avail herself of the opportunity presented because of her stated reason that she wanted the hearing held in St. Helena Parish. Plaintiff has made no claim here of prejudice to her case because of the site of the hearing, and the court judicially notices that the distance between Greensburg, Louisiana, and Covington, Louisiana, is only about fifty miles, all except approximately ten miles, by way of interstate highway. The evidence also establishes that other witnesses from the Greensburg area did attend the hearing in Covington and did testify. Absent some demonstrated prejudice to plaintiff's case, the hearing agency was under no obligation to change the hearing site merely because plaintiff indicated such would be more convenient for her. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *Hicks v. Wainwright,* 633 F.2d 1146 (5th Cir.1981); *Birdwell v. Hazelwood School District,* 491 F.2d 490 (8th Cir. 1974); *Hester v. Rizzo,* 454 F.Supp. 537 (E.D.La.1978).

9. The evidence presented conclusively establishes that plaintiff was employed by the St. Helena Parish School Board and that the Head Start Board was simply an agency created by the School Board with limited delegated responsibilities. The defendant, Regina Coeli Child Development Center, did not employ plaintiff and is a private concern not amenable to suit under 42 U.S.C. § 1983, in the absence of an allegation of conspiracy. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Taylor v. Gibson,* 529 F.2d 709 (5th Cir.1976).

10. The court concludes that the post-termination process afforded plaintiff satisfied due process requirements of the Constitution and notes also the comment of Justice Stevens in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976):

"The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." 426 U.S. at 341, 96 S.Ct. at 2080.

There will be judgment in favor of defendants dismissing plaintiff's action.