Jeanette B. FLOWERS,
Plaintiff-Appellant,

v.

TURBINE SUPPORT DIVISION et al.,
Defendants-Appellees.

No. 73–3903.

United States Court of Appeals,
Fifth Circuit.

Feb. 12, 1975.
Rehearing Denied March 27, 1975.

Bobby J. Nelson, James M. Simons, Austin, Tex., for plaintiff-appellant.

Doyle L. Coatney, John W. Davidson, San Antonio, Tex., for defendants-appellees.

Before GEWIN, AINSWORTH and GEE, Circuit Judges.

GEE, Circuit Judge:

On October 17, 1972, Appellant Flowers filed suit[1] against Appellee Turbine Support Division Chromalloy American Corporation (Turbine) alleging that she had been discriminated against and eventually fired because of her sex, because of her association with minority groups at work, and in retaliation for her opposition to practices made unlawful by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (the Act). As the suit progressed, Flowers proved to be less than the ideal plaintiff; three times show-cause orders had to be issued to goad her into complying with pre-trial orders of the court. Each order was, however, eventually complied with. About two months before the date eventually set for trial, Flowers filed an application for permission to proceed *in forma pauperis* (IFP). Six days before trial an order was issued denying the motion. Appellant filed a notice of appeal from this order. She also made an oral motion for continuance. This motion was denied. Flowers then unsuccessfully sought emergency relief in the form of a continuance from this Court and the Supreme Court. Appellant appeared for trial on September 24, 1973, the date set, and again sought a continuance—this time in writing. When this request was denied she announced "not ready." Thereupon, the trial court dismissed her case with prejudice for want of prosecution. F.R.C.P. 41(b).

We are now called upon to decide (1) whether the trial court abused its discretion in dismissing Flowers' suit and

1. Prior to instituting the suit Flowers had filed complaints with the Equal Employment Opportunities Commission. The District Director found reasonable cause to believe that Turbine had committed violations of the Act, but the Commission itself did not pursue the matter in court. Instead, on July 18, the District Director issued a right-to-sue letter to Appellant. Action, as required by the Act, was commenced within 90 days.

(2) whether it erred in denying her application to proceed IFP.

■ Turbine has pressed upon us the novel proposition that Flowers announced "not ready" in order to force a dismissal. This she did, according to Turbine, with the aim of disrupting the orderly procedure of the federal courts by forcing the issue of the earlier denial of her motion to proceed IFP—which it views as an interlocutory order—upon this Court without its first having been certified by the district court. Thus, Turbine accuses Flowers of purposely seeking dismissal to avoid 28 U.S.C. § 1292(b). As Turbine sees it, "There is only one issue in this case and that is whether parties to a lawsuit may circumvent the Federal Rules of Civil Procedure and appropriate Federal statutes to secure Interlocutory Appeal from the denial of [sic] her application to proceed *in forma pauperis.*" The problem with Turbine's framing of the issue and with the bulk of its argument is that denial of a motion to proceed IFP under 28 U.S.C. § 1915 is appealable, without reference to § 1292(b), as a final decision under 28 U.S.C. § 1291. Roberts v. United States District Court, 339 U.S. 844, 70 S.Ct. 954, 94 L.Ed. 1326 (1950); Kitchens v. Alderman, 376 F.2d 262 (5th Cir. 1967). Flowers was in the process of appealing this order in an orderly fashion when her case was dismissed.

■ Orders denying applications to proceed IFP are appealable as final decisions for reasons similar to those which prompted the Supreme Court to hold that the order in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) was appealable. An order denying IFP status finally decides an important issue which is collateral to the merits of the case. It is an order which is "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen, supra,* at 546, 69 S.Ct. at 1226. More importantly, it is an order the review of which cannot be deferred until the whole case is decided. Denial of IFP, if erroneous, tends to close the door of the courthouse to the true pauper, forcing him to forfeit his day in court. Such a person has little hope of successfully prosecuting his case to a traditional final judgment. It follows from this that a trial court judge acts at great risk of reversal when he puts a party who has appealed from an order denying him pauper status to trial in the interim. Should the party proceed to trial and lose, the decision on the merits must be reversed if the appellate court holds that IFP was erroneously denied and if the party's chances to prevail were prejudiced by the denial. If the party declines to proceed to trial and the court thereupon dismisses his suit for want of prosecution, a reversal of the denial of pauper status will mandate a reversal of the dismissal whenever it appears that denial of the status either prevented the party from proceeding to trial at all or seriously prejudiced his chances to win—unless, of course, there were sufficient, independent grounds for the dismissal.

■ We have concluded that the court below erred in denying pauper status to Ms. Flowers. Admittedly, a trial court has wide discretion in denying an application to proceed IFP under 28 U.S.C. § 1915. This is especially true, the rubric goes, in civil cases for damages, wherein the courts should grant the privilege sparingly. Weller v. Dickson, 314 F.2d 598 (9th Cir.), cert. denied, 375 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72 (1963).[2] However, in denying such applications a court must not act arbitrarily. Nor may it deny the application on erroneous grounds. Trujillo v. United States, 492 F.2d 128 (5th Cir. 1974). In its order the district court stated that it was denying Flowers' application for two

2. We note that this rule was developed primarily in the Ninth Circuit in a series of cases involving damage suits by prisoners against their keepers. It may be that the federal courts should not be so parsimonious in Title VII suits since Congress, apparently anticipating a special need, has specifically provided that a court may appoint an attorney in these cases and may "authorize the commencement of the action without the payment of fees, costs or security." 42 U.S.C. § 2000e–5(f)(1).

reasons. The first was that the application was not timely filed. The second was that Flowers' lawyers, to whom the court found she had assigned an interest in her cause of action, made no showing that *they* were paupers. These were not permissible reasons for denying IFP.

■ There is no requirement under 28 U.S.C. § 1915 that an application to proceed IFP be filed at any particular time. The statute contemplates that a person not a pauper at the commencement of a suit may become one during or prior to its prosecution. In fact, since one may not legitimately make such an application until he becomes a pauper, his application may not be denied simply because he made an initial decision to attempt to pay his own way.[3]

■ A lawyer who is working on a contingency fee basis is not required to certify that he is a pauper before his client may take advantage of 28 U.S.C. § 1915. Adkins v. E. I. Dupont de Nemours & Co., 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948). Assignment to one's lawyers of an interest in a cause of action in conjunction with a contingency fee arrangement is merely security for payment of that fee and does not raise the problems which purchase of a pauper's lawsuit by a wealthy person would. When the assignment is to the lawyer to secure his fee the rationale of *Adkins* controls, and pauper status may not be denied on the basis of the wealth of counsel. To rule otherwise would have the effect of creating a disincentive for lawyers to champion the causes of the poor.

■ The stated bases of the trial court's denial of Ms. Flowers' application to proceed IFP were erroneous, and that decision is reversed.[4] We note that there is a question as to whether or not, under prior case law and the facts here, the trial court could correctly have dismissed Ms. Flowers' application on the basis that she was not a pauper. Although the issue has been briefed and argued, we do not pass upon it since we are convinced that the court below felt bound to deny Ms. Flowers' application for the reasons that it gave and thus did not adequately consider the factual situation. This should be considered on remand if Ms. Flowers chooses to renew her application. Having reversed the denial of IFP, we must reverse the dismissal for want of prosecution unless the denial of pauper status neither prevented Flowers from proceeding to trial nor prejudiced her chances of prevailing or unless there was an adequate independent ground for the dismissal.

■ Flowers could have proceeded to trial as a nonpauper. However, she could have counted on only two witnesses—herself and her mother—voluntarily appearing on her behalf. The remainder of the 20-plus witnesses she believed were essential and the 45 she felt she needed would, she and her lawyer supposed, have to have been subpoenaed in order to insure their attendance. Since denial of pauper status denied her free subpoenas and since the lack of subpoena power made her chances of prevailing tenuous, we must hold that Ms. Flowers' cause was prejudiced.[5]

---

**3.** We note that we are not faced here with a case in which the application and affidavit were filed only shortly before trial simply for the purpose of causing delay. Here the application and supporting affidavit were filed on July 30, 1973. A hearing on the motion was held on August 8. At this point the question was taken under advisement. Both filing of the application and the hearing took place prior to the date (August 20) on which a nonjury trial was set for September 24. The order denying the application was finally issued on September 18—only six days before trial.

**4.** Once again, "Because of the manner in which we dispose of this case, we pretermit the question whether § 1915(a) limits judges' discretion to instances of untruthfulness of the affidavit or lack of merit in the claim." *Trujillo*, 492 F.2d at 129, fn. 3.

**5.** It is possible that the trial court as a condition of granting pauper status could have insisted that Flowers' attempt to persuade her witnesses to appear without subpoena. Also, he might have made a demand that Flowers make some showing as to why she needed so many witnesses. It goes without saying that had there been proof that Flowers listed unnecessary witnesses for the purpose of mak-

The remaining consideration is whether the trial court had sufficient ground, independent of Flowers' announcement of "not ready" following the denial of IFP, to invoke the ultimate sanction of dismissal. We conclude that it did not. Flowers' prior dilatory behavior, although reprehensible and undoubtedly frustrating to the court, does not create "a clear record of delay or contumacious conduct," Durham v. Florida East Coast Railway, 385 F.2d 366 (5th Cir. 1967), of which the announcement of not ready was the culmination.[6] Thus, dismissal was not warranted on the ground that Flowers had not pursued her cause of action in a diligent manner.[7] The other reasons given by the trial court for dismissal were not independent of his denial of IFP status for they merely justified his refusal to grant a continuance, and the request for the continuance had been made necessary by the denial of IFP.

Reversed and remanded.

ing the prosecution of her suit appear to be more expensive than it would otherwise have been, the expense of the unnecessary witnesses would have to have been disregarded in any determination of pauper status.

6. Lesser sanctions than dismissal were available to punish this conduct.

7. We note that at the time of its dismissal this case had been docketed for only eleven months.