Howard Eugene BRADEN, Plaintiff,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, et al., Defendants.

Civ. A. No. H–77–67.

United States District Court, S. D. Texas, Houston Division.

March 17, 1977.

Howard Eugene Braden, pro se.

No appearance for defendants.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

### I. INTRODUCTION

Plaintiff, an inmate at the Clemens Unit of the Texas Department of Corrections (TDC), filed the instant civil rights action pro se seeking declaratory, injunctive and monetary relief pursuant to 42 U.S.C. § 1983. Plaintiff complains specifically that a number of magazines for men have been withheld from him unconstitutionally by officials of the TDC. He has also requested permission to proceed in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915.[1]

For the reasons hereinafter delineated, the Court concludes that plaintiff should not be allowed to proceed further under 28 U.S.C. § 1915 without remittance of a partial payment of the filing fee.[2] In making this determination, this Court and the other Judges comprising the Southern District of Texas hereby adopt a flexible plan requiring partial payment of court costs by prisoners who seek to proceed in forma pauperis, but who, in fact, can afford a minimal

payment. As emphasized throughout this Order, the purpose of the "partial payment" requirement is to curb the indiscriminate filing of prisoner civil rights actions, by prompting inmates to "confront the initial dilemma which faces most other potential civil litigants: is the merit of the claim worth the cost of pursuing it?" *Carroll v. United States*, 320 F.Supp. 581, 582 (S.D. Tex.1970).

### II. PERTINENT CHRONOLOGY

The instant complaint was received by the United States District Clerk on Friday, January 7, 1977. Plaintiff had enclosed the required number of properly completed copies of the complaint and had submitted the mandatory form affidavit requesting permission to proceed in forma pauperis. After thus establishing that the technical requirements of filing had been met, the Clerk filed the complaint on Tuesday, January 11, 1977, without prepayment of fees, on the basis of plaintiff's affidavit stating that he is "unable to pay" such fees. *See Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

Under the purview of 28 U.S.C. § 1915(d), as interpreted in *Watson v. Ault, supra* at 891–93, and prior to the issuance of service of process, the complaint was subjected to an initial screening to determine whether or not (1) the cause of action is frivolous or malicious and (2) the allegation of poverty is supported in fact. An analysis of plaintiff's affidavit and the sources of current income listed therein indicated that further inquiry into his financial status and ability to pay court costs was justified. Plaintiff's affidavit revealed assets of "about $60.00" in his prison trust account, $10.00 in a savings account and a regular monthly income of $20.00 to $30.00 received from his relatives. In order to verify plaintiff's prison

---

1. The in forma pauperis statute, 28 U.S.C. § 1915, states in pertinent part:

    "(a) Any court of the United States may authorize the commencement . . . of [a] suit . . . without prepayment of fees and costs . . . by a person who makes affidavit that he is unable to pay such costs or give security therefor.

. "(d) The court may . . . dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."

2. 28 U.S.C. § 1914 provides that the filing fee shall be $15.00 except that habeas corpus applications are $5.00.

trust account activity, the Court requested, as it now does in most cases, a computer printout from E. & R. Accounting of the TDC. The printout and the accompanying Certificate of Attestation from the Supervisor of E. & R. Accounting, copies of which are attached to this Order as Exhibits 1 and 2, show that during the period of October 14, 1976, to March 4, 1977, plaintiff received a total of $190.00 from outside sources, and that on January 1, 1977, the date the affidavit was signed, plaintiff had $81.02 in his prison account. On March 4, 1977, the last day of the transaction period reflected on the computer printout, plaintiff had $41.02 in his account.

## III. IN FORMA PAUPERIS PRISONER COMPLAINTS: NEED FOR GREATER JUDICIAL CONTROL

Approximately 20 percent of the pending civil actions in the Southern District of Texas, and almost all of the actions filed in forma pauperis in this District, are prisoner suits. The existence of such a large percentage of indigent prisoner complaints has created many problems for the courts. As the Federal Judicial Center observed in its report entitled "Recommended Procedures for Handling Prisoner Civil Rights Cases in Federal Courts," (hereinafter "Aldisert Report"),

> "[t]he caseload is not only large numerically, but is also difficult to handle, especially because the plaintiff is usually unrepresented. As a consequence, a great deal of judge time and effort are devoted to the 'weeding out' of the nonmeritorious cases. Because of this, the best possible system for identifying the meritorious case must be developed. . . .
>
> ". . . It is generally agreed that most prisoner rights cases are frivolous and ought to be dismissed under even the most liberal of definitions of frivolity. What to most people would be a very insignificant matter becomes, because of the nature of prison life, a matter of real concern to the inmate. To have a United

States district judge spending time on what, at best, would be a small claims court matter for the ordinary citizen, seems inappropriate given the small size of the federal judiciary."

*Id.* at 12–13 (footnote deleted).

The procedures and forms promulgated in the Aldisert Report have, almost in their entirety, been adopted by this District, including the hiring of personnel to deal exclusively with this portion of the docket. There is no doubt but that these new procedures have aided in the efficient and uniform treatment of prisoner complaints and in the identification and elimination of gross abuse by multiple filers. *See, e. g., Hill v. Estelle,* 423 F.Supp. 690 (S.D.Tex. 1976).

The emphasis of the Aldisert Report and the Fifth Circuit cases which have discussed procedures for prisoner complaints, *see, e. g., Taylor v. Gibson,* 529 F.2d 709 (5th Cir. 1976); *Watson v. Ault, supra; Hardwick v. Ault,* 517 F.2d 295 (5th Cir. 1975), has been on the adoption of procedures which would streamline the substantive review methods once a case has been filed. However, these procedures, standing alone, cannot solve the two major problems facing the courts in this area, that is, (1) the large *number* of prisoner cases and (2) the frivolous *nature* of many of them.

These two problems are unique to prisoner suits filed in forma pauperis. A potential plaintiff typically will weigh the chance of success against the cost of pursuing his action and assess realistically whether the possible benefits outweigh the predictable costs. In the absence of a cost requirement, however, a prisoner plaintiff need not confront this dilemma. In addition, an attorney, as opposed to a pro se litigant, is bound by the Code of Ethics and Rule 11 of the Federal Rules of Civil Procedure to file only suits where there are good grounds to support the pleadings.[3] Moreover,

> "[p]ersons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful; and because of

---

**3.** A literal reading of Rule 11 suggests that pro se litigants are not bound by the constraints of Rule 11, although the Court is unable to locate any case authorities on this precise question.

their poverty, they are practically immune from later tort actions for 'malicious prosecution' or abuse of process. Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books, and mailing privileges the temptation is especially strong."

*Jones v. Bales*, 58 F.R.D. 453, 463 (N.D.Ga. 1972), *aff'd per curiam*, 480 F.2d 805 (5th Cir. 1973). Thus, not only are prisoners uninfluenced by the restraints which customarily deter private citizens from filing frivolous or borderline causes of actions, they actually are inclined to file lawsuits and engage in "writ writing" since this is one of the few activities left available to them which is beyond the administrative control of prison officials. Hence, as acknowledged by the Fifth Circuit Court of Appeals, "a large number of prisoner suits are predicated primarily upon the prisoners' boredom and resentment . . . ." *Taylor, supra* at 713.

## IV. ADOPTION OF A PARTIAL PAYMENT AND STEP–BY–STEP PLAN

■ In recognition of the aforementioned problems, two procedures hereby are instituted in an effort to reduce the number of frivolously-filed suits and to enhance the quality of those which are filed:

A. Institution of a partial payment requirement to be employed in those cases where payment of all the fees would work a hardship, but where the payment of a nominal sum would not; and

B. Determination of permission to proceed in forma pauperis on a step-by-step basis as costs are incurred, rather than the present method whereby the grant or denial of pauper status applies to the entire proceedings.

If fairly applied, these concepts will help eliminate the "high percentage of the claims [that] are indeed frivolous" without encroaching on those which "raise constitutional issues of great difficulty and of great importance". Aldisert Report, *supra* at 13. Moreover, rather than placing the entire burden on this Court "to winnow out the wheat from the unusual amount of chaff," *Watson, supra* at 890, the imposition of a modest financial sacrifice in the form of a partial payment of the filing and service fees will force a potential inmate plaintiff to evaluate the merits of his case in a manner which has heretofore been non-existent. A prisoner also will be more likely to take advantage of the Inmate Legal Services Project of the Texas State Bar, which is an administrative remedy providing attorneys at no cost to the inmate. The Staff Counsel attorneys at the TDC may also be given more serious consideration by the inmate in an attempt to air his non-prison related complaints without expense.

### A. Partial Payment of Court Costs

The permissive language of 28 U.S.C. § 1915 authorizes the court, in its discretion, to determine who is entitled to the benefits of litigation without cost. Judicial construction of the statute uniformly recognizes this power of the court, but there is wide variance as to the scope and manner of its application. Normally, the ordinary charges of officers of the court may be waived, including filing, copying, docketing and service fees, *McClure v. Salvation Army*, 51 F.R.D. 215, 216 (N.D.Ga.1971), but the parameters of the waiver have not been standardized. *See, e. g., Beard v. Stephens*, 372 F.2d 685, 690 (5th Cir. 1967) (cost of depositions not included), *Harless v. United States*, 329 F.2d 397, 398–99 (5th Cir. 1964) (cost of copies of court orders not included); *Douglas v. Green*, 327 F.2d 661, 662 (6th Cir. 1964), *cert. denied*, 379 U.S. 862, 85 S.Ct. 126, 13 L.Ed.2d 66 (1964) (cost of copies of court orders not included); *Ebenhart v. Power*, 309 F.Supp. 660, 661 (S.D.N.Y.1969) (cost of depositions not included).

■ It is logical that if the court may grant a waiver of 100 percent of the costs

on such a variety of items, the court also is vested with the discretion to waive a lesser percentage of such costs. This concept has a directly analogous statutory counterpart in the Criminal Justice Act. Title 18, United States Code, Section 3006A(c) provides:

> "If at any time after the appointment of counsel the United States magistrate or the court finds that the person is financially able to obtain counsel or *to make partial payment for the representation*, it may terminate the appointment of counsel or authorize payment . . . as the interests of justice may dictate." (emphasis added)

Thus, in the context of a court's obligation towards indigent criminal defendants, Congress has recognized that an "all or nothing" approach is not mandatory but that the court can require partial payment. The same rationale should be applied to indigent plaintiffs. Accordingly, where a litigant cannot pay the full filing fee or other court expense, but it would not be economically unfair for him to pay a portion of such cost, it should be within the court's authority to order payment of a portion of the expense while waiving the remainder.

Thus, in light of the permissive language of the statute, the broad discretion vested in the courts and the analogous criminal statute, 18 U.S.C. § 3006A(c), this Court will hereafter view all applications to proceed in forma pauperis with a more critical eye to ascertain if there is not some portion of the filing or service fees which the plaintiff can pay without financial hardship, rather than continuing the "all or nothing" approach which has helped precipitate the flood of prisoner suits in recent years.

### B. Step-by-Step Analysis of Pauper Status

A necessary auxiliary to the implementation of a partial payment program is the incorporation of a statement into each court order waiving or ordering payment of costs that the court will consider, as they arise, any other benefits sought to be obtained under the in forma pauperis statute. In this manner, a plaintiff ordered to pay a portion of the filing fee and service cost will understand that he is not foreclosed from proceeding in forma pauperis as to other, subsequently-incurred expenses necessary for the proper prosecution of his cause. This will assure the plaintiff that access to the federal court is still available to whatever extent the plaintiff is unable to pay. Moreover, the step-by-step approach also allows the court to know exactly what dollar amount of costs is at issue so that an objective comparison of available funds and actual costs can be made in computing a fair share of the expense to be borne by the inmate.

There presently is legal support in this Circuit for the proposition that decisions relating to indigency can be made at any stage of the proceedings:

> "There is no requirement under 28 U.S.C. § 1915 that an application to proceed IFP be filed at any particular time. The statute contemplates that a person not a pauper at the commencement of a suit may become one during . . . its prosecution. In fact, since one may not legitimately make such an application until he becomes a pauper, his application may not be denied simply because he made an initial decision to attempt to pay his own way."

*Flowers v. Turbine Support Division*, 507 F.2d 1242, 1245 (5th Cir. 1975) (footnote deleted). The § 1915 determination thus should be viewed as a fluid one and one that, like a class determination under Fed. R.Civ.P. 23(c)(1), does not prevent the court from altering an earlier determination as circumstances change. *See McClure, supra*. Accordingly, to ensure that the initial determination of pauper status relates only to plaintiff's ability to pay filing and service fees, orders granting or denying pauper status will explicate the limited nature of the court's decision.

### V. IMPLEMENTATION OF A PARTIAL PAYMENT REQUIREMENT AND APPLICABLE STANDARDS

The addition of this partial payment requirement to current procedures can be ac-

complished with a minimum of effort. This District previously has adopted a mandatory affidavit of indigency which is sufficiently detailed to give an accurate representation of a plaintiff's assets. In addition, the Court has direct access by telephone and by computer printout documentation to the inmate plaintiff's trust account balance for a particular date as well as a summary of past transactions during his incarceration. This trust account information is available at the TDC and, to a lesser extent, the Harris County Detention Center. Indeed, it is safe to say that the procedures for discovering a plaintiff's assets presently in use in this District are among the most advanced in the country. Because the fact-finding procedures are firmly established, the sole hurdle to implementation of a partial payment plan is the development of criteria to be applied to a given set of facts.

In determining whether a plaintiff should be granted leave to proceed in forma pauperis, courts have enunciated the following legal tests: is plaintiff barred from the federal courts by reason of his impecunity? *Souder v. McGuire*, 516 F.2d 820 (3rd Cir. 1975); is access to the courts blocked by the imposition of an undue hardship? *Startti v. United States*, 415 F.2d 1115 (5th Cir. 1969); or is plaintiff forced to contribute his last dollar, or render himself destitute to prosecute his claim? *Adkins v. E. I. DuPont de Nemours & Co., Inc.*, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948). Converted into a more objective standard, it is the majority practice among the courts who have published opinions in this area to deny in forma pauperis status to prisoners who have approximately $50.00 or more in their prison accounts or elsewhere. *See, e. g., Shimabuku v. Britton*, 357 F.Supp. 825 (D.Kan.1973), *aff'd*, 503 F.2d 38 (10th Cir. 1974) (plaintiffs with $45.00, $51.27 and $61.41 in prison

accounts not indigent); *Ward v. Werner*, 61 F.R.D. 639 (M.D.Pa.1974) (two plaintiffs with $50.00 and $65.00, respectively, do not qualify as paupers).

The Fifth Circuit, in a Title VII case sought to be litigated in forma pauperis by the plaintiff, has indicated that the privilege to maintain a cause of action in federal court without charge should be granted "sparingly" in prisoner civil rights cases. *Flowers v. Turbine Support Division*, 507 F.2d 1242, 1244 (5th Cir. 1975),[4] *citing Weller v. Dickson*, 314 F.2d 598 (9th Cir.), *cert. denied*, 375 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72 (1963). The Ninth Circuit opinion in *Weller v. Dickson, supra*, although written prior to the explosion in prisoner litigation of past years, accurately predicted the consequences of judicial liberality towards prisoner-plaintiffs seeking to bring expense-free actions:

> "[B]y way of observation, we note that if actions of this nature, brought by incarcerated prisoners, are to be indiscriminately permitted they . . . would give prisoners a field day in the courts, at public expense."

*Id.* at 601.

Obviously, it is impracticable, if not impossible, to formulate a precise partial payment schedule to be applied across the board to in forma pauperis applications, and the Court will not attempt to do so at this time. Although the Judges of this District intend to apply the partial payment requirement uniformly within certain general guidelines to be developed through experience, too many variables prohibit an enunciation of even rough criteria at this time. For example, the prison accounts of many inmate filers fluctuate greatly over time, thus preventing the Court from placing special reliance or significance on an inmate's account balance as of a particular date.

---

**4.** In *Taylor, supra* at 714, the Court of Appeals for the Fifth Circuit noted favorably the language of Justice Douglas' special concurrence in *Cruz v. Hauck*, 404 U.S. 59, 64, 92 S.Ct. 313, 316, 30 L.Ed.2d 217 (1971), stating that "in forma pauperis aid should normally be granted as a matter of course in order to 'minimize courts' treatment of litigants based upon eco-

nomic circumstances' ". The context of *Taylor*, however, was limited to a condemnation of the district court practice of refusing even to docket in forma pauperis cases until a substantive analysis of the merits had been made. When thus construed, *Taylor* and *Flowers* are not in conflict.

Thus, in lieu of setting up wooden inflexible benchmarks, a flexible approach to the partial payment requirement will be employed whereby each Judge will determine, on the basis of a plaintiff's financial history and present economic status, whether a partial payment is warranted and, if so, the amount of such payment.

■ In the instant case, given that (1) plaintiff's necessities of life are provided by the State of Texas; (2) his trust account balance was (a) $81.02 when he signed the affidavit of indigency on January 1, 1977, and (b) $41.02 on March 4, 1977, the most recent date reflected on the computer printout; (3) he has a regular monthly income of $20.00 to $30.00, the Court is of the opinion that a partial payment of the filing fee of $9.00 is eminently reasonable and should be required in the instant case prior to issuance of service of process.

## VI. CONCLUSION

This Court is under a specific mandate to develop "imaginative and innovative methods of dealing with the flood of prisoner complaints and suits, most all of which are brought under Section 1983 and filed in forma pauperis". *Taylor, supra* at 717. On the basis of this mandate, the data available to this Court and the applicable law, the Court concludes that although plaintiff should not be required to bear the entire cost of this cause of action, he should not be allowed to proceed wholly at the expense of the public. Therefore, it is hereby ordered that plaintiff submit to the Clerk within thirty (30) days a money order for $9.00 made payable to the U.S. Clerk as a partial payment of his filing fee. The remainder of the filing and service fees are waived. Failure to submit the partial payment in a timely manner will result in dismissal of this cause of action.

## EXHIBIT 1

```
                    T E X A S   D E P A R T M E N T   O F   C O R R E C T I O N S
                              INMATE BANKING TRANSACTION HISTORY
REPORT NR. IB360860                                                              PAGE   1
COMPUTER REPORT GAOB 77063

TDC NR  LAST NAME  FIRST NAME  MI    DATE     AMOUNT    LOC   TRANSACTION           RPT NR  TYPE   SENDEE
241878  BRADEN     HOWARD      E    10-14-76   20.00    CN   *PR              A     000600  B4
241878  BRADEN     HOWARD      E    10-19-76   15.00         **MOAH11787334   A     456210  B1   C LEWIS
241878  BRADEN     HOWARD      E    10-27-76   10.00    CN    PR              A     000600  B4
241878  BRADEN     HOWARD      E    11-04-76   15.00         MOD288787785     A     459601  B1   C LEWIS
241878  BRADEN     HOWARD      E    11-18-76   20.00         MO21949247621    A     461911  B1   C LEWIS
241878  BRADEN     HOWARD      E    11-23-76  100.00         MOD288806114     A     462801  B1   C LEWIS
241878  BRADEN     HOWARD      E    11-24-76   20.00    CN    PR              A     000600  B4
241878  BRADEN     HOWARD      E    12-01-76   20.00    CN    PR              A     000600  B4
241878  BRADEN     HOWARD      E    12-07-76   20.00    CN    PR              A     000600  B4
241878  BRADEN     HOWARD      E    12-13-76   20.00         MOD296774310     A     465704  B1   C LEWIS
241878  BRADEN     HOWARD      E    12-15-76   20.00    CN    PR              A     000600  B4
241878  BRADEN     HOWARD      E     1-05-77   10.00    CN    PR              A     000600  B4
241878  BRADEN     HOWARD      E     1-20-77   10.00    CN    PR              A     000600  B4
241878  BRADEN     HOWARD      E     2-03-77   20.00    CN    PR              A     000600  B4
241878  BRADEN     HOWARD      E     2-09-77   20.00         MOAH12484837     A     474107  B1   C LEWIS
241878  BRADEN     HOWARD      E     2-16-77   10.00    CN    PR              A     000600  B4
241878  BRADEN     HOWARD      E     3-01-77   10.00    CN    PR              A     000600  B4

*PR = Inmate Payroll Withdrawal

**MO = Money Order Deposit
```

**602**

## EXHIBIT 2

V. BAILEY THOMAS
CLERK

C.A. No. H-77-67

To: Mr. W.H. Whaley, E. & R. Accounting
P.O. Box 99, Huntsville, Texas 77340

Please complete and return this form along with a computer
printout for the inmate named below. This information is
needed by the Court to determine if the inmate qualifies as
a pauper.

Thank, you
Deputy Clerk

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

### CERTIFICATE OF ATTESTATION

I, W. H. Whaley, Supervisor of E. and R. Accounting for the
Texas Department of Corrections, do hereby certify that I have
compared the computer printout to which this certificate is
attached with the original records relating to the Trust Account
of Inmate BRADEN, Howard Eugene , TDC. No. 241878-A as the
same appears of record and on file in my office at the Adminis-
tration Building of the Texas Department of Corrections in the
City of Huntsville, Walker County, State of Texas, and that said
printout is a true and correct copy and summary of all the trans-
actions in the Trust Account of said Inmate for the period of
Oct. 1, 1976 to Jan 1, 1977 .

I further certify that the balances in said Inmate's Trust
Account on the following dates were:

| Date | Balance |
|---|---|
| 1. Oct. 1, 1976 (Beginning of Period) | 21.02 |
| 2. Jan. 1, 1977 (End of Period) | 81.02 |
| 3. Mar 4, 1977 (Date of Computation) | 41.02 |

In testimony thereof, I have hereto set my hand on this
the 4 day of March , 1977.

W. H. Whaley, Supervisor
E. & R. Accounting, TDC

### Certificate of Authentication

I, Denise W. Pentico , a Notary Public in and for
Walker County, State of Texas, do hereby certify that W. H. Whaley,
whose name was subscribed to the foregoing Certificate of Attes-
tation in my presence, now is, and was, at the time of signing
same the Supervisor of E. & R. Accounting for the Texas Department
of Corrections and the lawful custodian of the records relating to
the Inmate Trust Account named in the Certificate of Attestation,
and that said records were kept in Huntsville, Walker County,
State of Texas.,

Given under my hand and seal on March 9 , 1977.