Gregory J. WILLIAMS et al., Plaintiffs,

v.

Elizabeth SPENCER et al., Defendants.

Civ. A. No. M–78–765.

United States District Court,
D. Maryland.

July 11, 1978.

Bernard Jay Williams, Silver Spring, Md., Michael D. Simpson, Washington, D. C., for plaintiffs.

Paul V. McCormick, Rockville, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiffs Gregory J. Williams and Mark I. Gutstein, two sixteen year old students completing their high school junior year, suing individually and by Mrs. Williams (Gregory's mother) and Mr. Gutstein (Mark's father) brought this suit under 42 U.S.C. § 1983 against the Montgomery County School Board, its seven members, the county superintendent, and their high school's principal and building monitor. They alleged that the defendants had violated their rights under the First and Fourteenth Amendments to distribute on the high school campus their nonschool sponsored "underground" newspaper, the "Joint Effort." The defendants had prohibited distribution of the newspaper on campus, *inter alia*, because it contained an advertisement, for "That Apogee III Bong" by the "Earthworks Headshop specializ[ing] in smoke and coke paraphernalia." The advertisement urged the reader "when you're really serious about your smoking pleasure, come to the Earthworks . . . ." PX C, at 8. The defendants found that the advertisement encouraged "actions which endanger the health or safety of students." PX G. After a hearing on the merits, this court also concluded, *inter alia*, that the advertisement encouraged the use and consumption of cocaine and marihuana and that the Maryland General Assembly and the United States Congress had found the use and consumption of marihuana and cocaine to endanger the user's health.[1] Given the facts of this specific advertisement, of the specific school rule, and of these legislative findings, this court held that the defendants' prohibition on distribution of the advertisement and the publication contain-

---

[1]. Marihuana is a Schedule I controlled substance. 21 U.S.C. § 812(c), Schedule I(c)(10). Under federal law, this means that Congress has found the following:

"(1) Schedule I.—

"(A) The drug or other substance has a high potential for abuse.

"(B) The drug or other substance has no currently accepted medical use in treatment in the United States.

"(C) There is a lack of accepted safety for use of the drug or other substance under medical supervision."

21 U.S.C. § 812(b)(1). *Accord, Md.Ann.Code* art. 27, § 279(a), Schedule I(c)(7) (1976 Repl. Vol.).

Cocaine is a Schedule II controlled substance. 21 U.S.C. § 812(c), Schedule II(a)(4). Under federal law this means that Congress has found the following:

"(2) Schedule II.—

"(A) The drug or other substance has a high potential for abuse.

"(B) The drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions.

"(C) Abuse of the drug or other substances may lead to severe psychological or physical dependence."

21 U.S.C. § 812(b)(2). *Accord, Md.Ann.Code* art. 27, § 279(b), Schedule II(a)(2) (1976 Repl. Vol.).

ing it did not violate the First and Fourteenth Amendments. *See Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Nitzberg v. Parks*, 525 F.2d 378 (4th Cir. 1975); *Baughman v. Freienmuth*, 478 F.2d 1345 (4th Cir. 1973); *Quarterman v. Byrd*, 453 F.2d 54 (4th Cir. 1973). *Cf. F. C. C. v. Pacifica Foundation,* —— U.S. ——, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978).

The plaintiffs, who paid the filing and Marshall's fees for their District Court proceeding, now move to proceed on appeal *in forma pauperis* under 28 U.S.C. § 1915(a).[2] The plaintiffs urge that only the financial resources of the two sixteen year old high school student plaintiffs should be considered[3] and that their financial capacity disclosed in the affidavits here establishes they are "unable to pay such costs or give security therefor."

## I.

The two sixteen year old plaintiffs urge that only their own personal financial resources and not their parents' resources should be considered in ascertaining the propriety of an *in forma pauperis* proceeding under 28 U.S.C. § 1915, relying on *In re American Mounting & Die Cutting Co.*, 126 F.2d 419 (8th Cir. 1942), and *Carter v. Kurn*, 120 F.2d 261 (8th Cir. 1941). In those cases, the courts held that the financial resources of the beneficiaries of the litigation rather than the personal resources of their legal representatives, in *American* a trustee of a bankrupt's estate and in *Carter* an administrator of a decedent's estate, controlled the availability of relief under § 1915, as neither estate had resources sufficient to prosecute the litigation. These cases are, however, inapposite because the obligations of

those legal representatives to protect the legal estates and to incur personal expenses in connection therewith were more limited than the obligations of a parent or voluntary guardian *ad litem* or next friend to protect his minor ward. *See McDuffee v. Boston & Maine R.R.*, 82 F. 865 (D.Vt.1897); *Roy v. Louiseville N. O. & T. R.R.* 34 F. 276 (W.D.Tenn.1888); *Ferguson v. Dent*, 15 F. 771 (W.D.Tenn.1883); *Brown v. The Henry Pratt*, 4 F.Cas. 384 (No. 2010) (S.D.N.Y. 1843). In *McDuffee*, under a prior enactment of § 1915, the affidavit of a widow was held sufficient for herself and her infant children whom she represented as next friend. In *Roy*, under the common law and notwithstanding oaths of poverty by the infant plaintiff and his voluntary next friend, leave to proceed *in forma pauperis* was denied because the financial responsibility for costs by the next friend was thought desirable to protect potential opponents and courts from frivolous and insubstantial litigation by irresponsible next friends and to protect infants' good causes of action from prejudicial intermeddling by irresponsible friends and because the good causes of action belonging to infants were protected by the tolling of the statutes of limitations until they possessed sufficient maturity and experience to control and pay for their own litigation. In *Ferguson*, under the common law, an application by three defendant minor children, offering affidavits of their own inability to pay, for an order that the receivers of disputed property pay the costs of suit was denied because the defendant mother and the defendant brother and guardian *ad litem* were obliged in that case to support the defense of all the defendants' interests in the property. The general rule stated and applied by the court was:

> "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."

---

**2.** 28 U.S.C. § 1915(a) provides:

"(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

**3.** The court expresses no opinions about the capacity of the sixteen year old plaintiffs to prosecute an appeal on their own without joining formally a parent or next friend. In this court their parents were also plaintiffs. F.R. Civ.P. 17.

"If, therefore, these minors have been rendered really indigent by what would be a desertion of their defense by their mother or brother and guardian *ad litem*,—if these be able to pay costs and expenses as alleged,—or by a deprivation of the possession of the property in dispute in this case, they should be let in to defend *in forma pauperis*, unless they be dispauperized by a showing to the contrary."

15 F. at 773. Finally, in *The Henry Pratt*, the libellant guardian *ad litem* of her minor seaman son was denied leave to proceed *in forma pauperis* as the court applied the general rule that in admiralty the voluntary guardian *ad litem* vindicating another's interests cannot be excused from the ordinary burdens of costs.

The applicability of the rules defined in these venerable cases to § 1915 under present day circumstances must be examined.

The first rule supported by all these cases is that where leave to proceed *in forma pauperis* is sought to vindicate the alleged substantial rights of a minor, the financial resources of both the minor and of the volunteer parent, next friend, or guardian *ad litem* controlling the litigation should be considered in determining ability to pay the costs of litigation. The explicit language of § 1915 does not in terms address this issue, nor has it been raised in current cases offered by the plaintiffs or found by this court. However, in *Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948), where the District Court construed the affidavits as showing no more than hardship, Justice Black wrote for a unanimous Court:

"We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. *We think an affidavit is sufficient which states that one cannot because of his poverty 'pay or give security for the costs . . . and still be able to provide' himself and dependents 'with the necessities of life.'* To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar *they have or can get*, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution."

*Id.* at 339–340, 69 S.Ct. at 89 (emphasis added).

*Adkins* teaches that, in the practical judgment required by § 1915, the test is whether the burden of paying fees or giving security for costs would interfere with the ability to provide the "necessities of life" for the litigant and his dependents, and it suggests that, subject to this test, it is not unthinkable to consider the resources "they have or can get." In a case where alleged substantial rights of a minor are being vindicated in litigation controlled by a volunteer, solvent parent, next friend, or guardian *ad litem*, there is nothing unreasonable or inconsistent with § 1915 in continuing to look to the resources of both. Preliminarily, the necessities of life are already provided for the minor. Given this foundation, no reason has been advanced why minors and those who voluntarily control and sponsor litigation vindicating the minor's alleged substantive rights should be relieved generally from the initial question in any litigation: whether the relief prayed in the particular factual situation and the likelihood of success warrant committing themselves and their money, if solvent. *See generally United States v. Stone*, 298 F.2d 441 (4th Cir. 1962), (per curiam), where in a case prior to the Criminal Justice Act of 1964, a defendant's motion to proceed *in forma pauperis* for an order requiring the Government to pay the costs of a transcript was denied since he had an annual income

of $2,400 and his wife had an annual income of $4,390; *United States v. Kelly*, 467 F.2d 262 (7th Cir. 1972), where under the Criminal Justice Act the defendant's inability to obtain further funds from his ex-wife and brothers was reviewed but not relied on; *Braden v. Estelle*, 428 F.Supp. 595 (S.D.Tex. 1977), where partial payments of costs and fees were required from prisoners whose necessities were provided; Financial Affidavit, Criminal Justice Act Form 23, where the applicant is asked, *inter alia*, "If a minor under age 21, what is your Parents' or Guardian's approximate monthly income" and if married, "how much does your spouse earn per month?"

The question under 28 U.S.C. § 1915 is whether the litigant is "unable to pay" the costs, and the answer has consistently depended in part on litigant's actual ability to get funds from a spouse, a parent, an adult sibling, or other next friend. Therefore, this court holds that under 28 U.S.C. § 1915 where leave to proceed *in forma pauperis* is sought to vindicate the alleged substantive rights of a minor, the financial resources of both the minor and the volunteer parent, next friend, or guardian *ad litem* should be considered in determining ability to pay the costs of litigation.

The second rule applied in cases such as *Roy* and *The Henry Pratt*, but rejected in *Ferguson*, is that even if unable to pay the costs, the guardian *ad litem* and minor would not be granted leave to proceed *in forma pauperis*. This rule has been changed by § 1915(a)'s test of inability to pay, and the purpose of the former rule is now largely served by the court's power under § 1915(a) to determine if an appeal is taken in good faith, under § 1915(d) to dismiss frivolous or malicious litigation, and under § 1915(e) to impose costs as in other cases notwithstanding the prior leave to proceed *in forma pauperis*. *See Perkins v. Cingliano*, 296 F.2d 567 (4th Cir. 1961) (costs); *Graham v. Riddle*, 554 F.2d 133 (4th Cir. 1977) (§ 1915(d)).

## II.

The affidavits of the two sixteen year old plaintiffs (Mrs. Williams and Mr.

Gutstein did not file affidavits) neither suggest nor establish that their parents' interests are antagonistic to their interest, that their parents are indifferent to their situation, that their parents are unwilling to pay or lend them the costs of this suit, or that their parents are financially unable to fund this litigation. The court notes that Mr. Bernard J. Williams, Esq., Gregory's father, is one of plaintiffs' counsel and that the transcript has already been unconditionally ordered by plaintiffs. Finally, the court concludes that the financial resources of the two sixteen year old plaintiffs alone (allowances of $32.50 per month, savings accounts of approximately $200, and savings bonds of $1300), since all the necessities of life are provided for them, would require at least a substantial partial payment of the costs of appeal. *Cf. Braden, supra.*

Accordingly, it is ordered that the motion for leave to appeal *in forma pauperis* is DENIED.