**William H. TEMPLE, Plaintiff,**

v.

**Donald O. ELLERTHORPE and Stafford Quick, Defendants.**

Civ. A. No. 84–0194 S.

United States District Court,
D. Rhode Island.

May 23, 1984.

William H. Temple, pro se.

Anthony C. Cipriano, Legal Counsel for Rhode Island Dept. of Corrections, Cranston, R.I., for defendants.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This is an action brought pro se by William H. Temple, an inmate at the Adult Correctional Institution (ACI), Cranston, Rhode Island, a state penal facility, challenging his classification and the conditions of his confinement at the ACI. The defendants are officials of the Rhode Island Department of Corrections having supervisory authority over the ACI and those enrolled therein. While the complaint is silent as to its jurisdictional bases, the allegations purport to invoke, by implication, the plaintiff's civil rights, viz., the fifth, sixth, eighth and fourteenth amendments to the United States Constitution and 42 U.S.C. § 1983.

Temple seeks to proceed in forma pauperis without prepayment of fees and costs or the necessity of giving security therefor, pursuant to 28 U.S.C. § 1915.[1] He has tendered a form application in connection therewith, executed under penalties of perjury on April 9, 1984. The defendants object, arguing that Temple possesses the ability to pay for the filing and service of his complaint, and is ineligible for forma pauperis status. In support of their objection, they have submitted the affidavit of Carol A. Padula, a business management officer at the ACI, as well as Temple's inmate ledger card. These documents show unequivocally that the plaintiff had, from this source alone, funds on hand as of April 9 in the amount of $551.31. The latest entry in the ledger (May 9, 1984) reflects a residual balance of $526.36.

■ In his application, Temple answered in the affirmative the question: "Do you own any cash, or do you have money in checking or savings account (include any funds in prison accounts)?; and stated the "total value" of these assets as being $22.98. In light of the revelations contained in the ACI accounting records, this assertion was demonstrably false when made. The federal courts, beseiged as they are with prisoner suits, cannot wink at inmate prevarication. If meritorious cases are to receive sorely-needed attention, the judiciary can ill afford to tolerate disinformation or benignly to indulge those who gild, or as Judge Aldrich would have it, *Maram v. Universidad Interamericana de Puerto Rico,* 722 F.2d 953, 959 & n. 3 (1st Cir.1983), paint the lily. Temple's action is,

---

1. 28 U.S.C. § 1915(a) provides in pertinent part:

   (a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs of security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

under 28 U.S.C. § 1915(d),[2] subject to dismissal for this reason alone—inasmuch as his representations anent his financial condition were patently untrue. *See Sturdevant v. Deer,* 69 F.R.D. 17, 18 (E.D.Wis. 1975).

But, because the question of eligibility for the forma pauperis mantle is a recurring one, and because there is a dearth of caselaw in this district on the topic, the court will in this instance look beyond the obvious.

"Inability to pay" is a nettlesome concept; the noun predicate is subject to myriad shades of meaning in varying contexts and the operative verb is eternally dependent upon the unmentioned object (*i.e.,* to pay for what?). Thus, the due interpretation of the phrase lends itself to a fluid case-by-case approach. Certainly, one need not be penniless to enjoy the benefits of § 1915. Justice Black, speaking for a unanimous Court, observed some thirty-five years ago:

> To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support.

*Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948).

Yet, there is a flip side to the forma pauperis coin. The First Circuit has phrased it bluntly:

> (A) plaintiff, even though of small means, could reasonably be asked to some small degree to "put his money where his mouth is," it being all too easy to file suits, even with sufficient pro forma allegations, if it costs nothing whatever to do so.

*In re Stump,* 449 F.2d 1297, 1298 (1st Cir.1971) (per curiam).

The views of the Court in *Adkins* and of the First Circuit in *Stump* are comfortably reconcilable in theory. Whether one lowers the water or raises the bridge, the identic result inures. Taken in concert, these cases require the nisi prius court to hold the balance steady and true as between fairness to the putatively indigent suitor and fairness to the society which ultimately foots the bill.

The trial court must be careful to avoid construing the statute so narrowly that a litigant is presented with a Hobson's choice between eschewing a potentially meritorious claim or foregoing life's plain necessities. *Potnick v. Eastern State Hospital,* 701 F.2d 243, 244 (2d Cir.1983) (per curiam); *Carson v. Polley,* 689 F.2d 562, 586 (5th Cir.1982). But, the same evenhanded care must be employed to assure that federal funds are not squandered to underwrite, at public expense, either frivolous claims or the remonstrances of a suitor who is financially able, in whole or in material part, to pull his own oar. *Brewster v. North American Van Lines, Inc.,* 461 F.2d 649, 651 (7th Cir.1972). In practice, however, the idiosyncrasies of individual cases and the difficulties so often inherent in the hands-on application of high-minded principle tend to blur the picture.

Many courts have held that petitioners with modest cash reserves are not paupers within the intendment of 28 U.S.C. § 1915(a) for the purpose of filing fees, initial service of process costs and the like.[3]

---

**2.** 28 U.S.C. § 1915(d) provides in material part:
(d) The court may ... dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

**3.** The situation may, of course, change midstream if a party is faced with some concrete and substantial expense beyond his resources

and fairly necessitated by the exigencies of the particular litigation. *Cf. Stump,* 449 F.2d at 1298; *Green v. Cotton Concentration Co.,* 294 F.Supp. 34, 35–36 (S.D.Tex.1968). But, there is a *caveat* applicable to his *caveat;* as *Green* teaches, "[t]he federal paupers statutes were enacted to make the federal courts accessible to

*See, e.g., Stump, supra* (order that prisoner with institutional account totaling $218 pay filing fees affirmed); *Ali v. Cuyler,* 547 F.Supp. 129, 130 (E.D.Pa.1982) ("plaintiff possessed savings of $450 and the magistrate correctly determined that this amount was more than sufficient to allow the plaintiff to pay the filing fee in this action ..."); *United States ex rel. Irons v. Pennsylvania,* 407 F.Supp. 746, 747 (not an abuse of discretion to require a state prisoner who had $170.40 on hand to pay filing fee in habeas corpus proceeding); *Ward v. Werner,* 61 F.R.D. 639, 640 (M.D.Pa.1974) (prison inmates who had accounts of $50 and $65, respectively, were not entitled to proceed as paupers); *Shimabuku v. Britton,* 357 F.Supp. 825, 826 (D.Kan.1973), *aff'd,* 503 F.2d 38 (10th Cir.1974) (rejecting indigency standing for inmates who had prison accounts ranging from $315.31 to $45, respectively); *Carroll v. United States,* 320 F.Supp. 581, 582 (S.D.Tex.1970) (forma pauperis inappropriate vis-a-vis filing fees since plaintiff had stashed away upwards of $200). *Cf. Williams v. Spencer,* 455 F.Supp. 205, 209 (D.Md.1978); *Braden v. Estelle,* 428 F.Supp. 595, 600 (S.D. Tex.1977).[4]

■ But, there is no bright-line demarcation. At bottom, the recipe to be utilized must be one in which ingredients of fairness and human decency are brewed in a cauldron of economic reality. If an applicant has the wherewithal to pay court costs, or some part thereof, without depriving himself and his dependents (if any there be) of the necessities of life, then he should be required, in the First Circuit's phrase, to "put his money where his mouth is." *Stump,* 449 F.2d at 1298. *Accord Adkins,* 335 U.S. at 339, 69 S.Ct. at 89; *Ali,* 547 F.Supp. at 130; *Carroll,* 320

F.Supp. at 582. Conversely, if a contribution towards such expenses is outside an applicant's means or would so deplete his resources as to work a deprivation of basic human needs, resort to forma pauperis is entirely appropriate. *See Adkins, supra; In re Smith,* 600 F.2d 714, 716 (8th Cir. 1979); *Souder v. McGuire,* 516 F.2d 820, 824 (3d Cir.1975); *Ali,* 547 F.Supp. at 130. *Accord Zaun v. Dobbin,* 628 F.2d 990, 992–93 (7th Cir.1980).

Prisoner cases, however, present a unique taxonomy: by definition, a convict's "basic human needs"—food, shelter, clothing, health care, and the like—are fully subsidized by the government in consequence of his institutionalization. Unless dependents are somehow involved, there is certainly less cause for concern as to a prisoner's need for personal funds to sustain his existence. Yet, human dignity comes in variegated shapes and sizes. As the Third Circuit has noted:

> [W]e do not think that prisoners must totally deprive themselves of those small amenities of life which they are permitted to acquire in a prison ... beyond the food, clothing, and lodging already furnished by the state. An account of $50.07 would not purchase many such amenities; perhaps cigarettes and some occasional reading material. These need not be surrendered in order for a prisoner ... to litigate in forma pauperis in the district court.

*Souder,* 516 F.2d at 824.

The *Souder* appraisal harmonizes nicely with the views of the Court in *Adkins,* and appears · eminently sound—so long as a fact-finder is able to differentiate *Souder's* "small amenities" from more extravagant fripperies. Penitentiaries, too, have their

---

those of modest means; they were not intended to authorize the court to give an indigent carte blanche." *Id.* at 36. *Cf. Morrow v. Igleburger,* 584 F.2d 767, 772 n. 7 (6th Cir.1978), *cert. denied,* 439 U.S. 1118, 99 S.Ct. 1027, 59 L.Ed.2d 78 (1979), *reh'g denied,* 440 U.S. 931, 99 S.Ct. 1271, 59 L.Ed.2d 489 (1979).  ·

**4.** In *Braden,* Judge Bue surveyed the reported cases and concluded that "it is the majority

practice ... to deny in forma pauperis status to prisoners who have approximately $50.00 or more in their prison accounts or elsewhere." *Id.* This court does not place its imprimatur on so tight-fisted a threshold; indeed, there seems to be little merit in setting any precise monetary cut-off point into cement. As noted throughout, particular suits and circumstances must be surveilled on a case-by-case basis.

functional equivalent of the poverty level. On a forma pauperis application, "[w]hat may be required by the district court in the exercise of its discretion is a payment which is fair in the light of the actual financial situation of the particular pro se litigant." *Bullock v. Suomela*, 710 F.2d 102, 103 (3d Cir.1983).[5]

■ With this general discussion in mind, the court now turns to Temple's situation. The fees and costs involved at this stage of the proceedings are small: the filing fee, 28 U.S.C. § 1914, is $60, and expenses for service of process (which would not, in the case of two local defendants, be great in any event) are rendered negligible by the availability of the alternate forms of service of process endorsed by the recent amendments to Fed.R.Civ.P. 4(c), Pub.L. 97–462, § 2(2) (eff. Feb. 26, 1983). Temple has, in his prison account, in excess of $500. Under Rhode Island law, inmate account balances are an available resource to defray litigation expenses.[6] Temple, in proffering his application, refused or neglected to secure the warden's certification, as required by the form. He listed no persons dependent upon him for support. He has alleged no facts giving rise to any atypical economic drain, nor does his ledger show a pattern of recurrent disbursements for diacritical needs. There is no basis for any rational suggestion that prepayment of the start-up costs of suit would exceed his means, or strip him of either basic necessities or appropriate amenities. Under these circumstances, the plaintiff cannot be viewed as a person "unable to pay" the initial expenses of his suit within the ambit of 28 U.S.C. § 1915(a)[7]; and it is fair and realistic—fiscally and sociologically—that he do so. Therefore, if Temple desires to pursue the instant claims, he must "put his money where his mouth is." *Stump*, 449 F.2d at 1298.

Nor is this result Draconian in any sense. Close to fifteen percent of the total civil caseload in this district is comprised of prisoner civil rights cases; and these self-same actions constitute almost one hundred percent of all civil forma pauperis filings (excepting social security appeals). Whereas the prototypical prospective party-plaintiff must engage in some sort of rough cost/benefit analysis to assess whether or not the litigation game is worth the candle, a forma pauperis suitor is free of any such constraints. He expends nothing to press his case, and he is immune from imposition of costs if his suit is ultimately adjudged to be meritless. "The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books and mailing privileges the temptation is especially strong." *Jones v. Bales*, 58 F.R.D.

---

5. At least two circuit courts of appeal have indicated that the privilege of suing in as a pauper should be granted "sparingly" in prisoner civil rights cases. *Flowers v. Turbine Support Division*, 507 F.2d 1242, 1244 (5th Cir.1975); *Weller v. Dickson*, 314 F.2d 598, 601 (9th Cir.), *cert. denied*, 375 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72 (1963). *Cf. Daye v. Bounds*, 509 F.2d 66, 68 (4th Cir.), *cert. denied*, 421 U.S. 1002, 95 S.Ct. 2404, 44 L.Ed.2d 671 (1975). As the *Weller* court so accurately predicted two decades ago:

> [I]f actions of this nature, brought by incarcerated prisoners, are to be indiscriminately permitted they ... would give prisoners a field day in the courts at public expense.

314 F.2d at 601.

The First Circuit has not, however, indicated that prisoner petitions rate any special scrutiny in this regard; and the case at bar does not require the court to express an opinion today on this proposition.

6. Rhode Island Gen.Laws § 42–56–22, as amended by P.L.1983, ch. 56, § 1, expressly sanctions "the use of the funds in said account for the payment of any court fees and court costs required to be paid for the filing, prosecution and defense of any action."

7. This court expressly adopts the philosophy of the step-by-step analysis of pauper status envisioned in *Braden*, 428 F.Supp. at 599. Thus, today's focus must be on the fees and costs involved at commencement of the action. If a pay-as-you-go plaintiff is, down the road, confronted with necessary expenses of litigation which overshoot his then-available means, he can at that time, by proper petition, seek refuge under § 1915. *See* text *ante*, at n. 3. *See also Flowers*, 507 F.2d at 1245; *Stump*, 449 F.2d at 1298; *Braden*, 428 F.Supp. at 599.

453, 463 (N.D.Ga.1972), *aff'd*, 480 F.2d 805 (5th Cir.1973) (per curiam). *See also Dickinson v. French*, 416 F.Supp. 429, 432–33 (S.D.Ala.1976). Judge Bue summarized the effect of this amalgam of factors:

> [N]ot only are prisoners uninfluenced by the restraints which customarily deter private citizens from filing frivolous or borderline causes of actions, [but] they actually are inclined to file lawsuits and engage in 'writ writing' since this is one of the few activities left available to them which is beyond the administrative control of prison officials.

*Braden*, 428 F.Supp. at 598.

If the courts are not to be inundated by a continuing flood of prisoner civil rights cases, many of which are of uncertain merit, fair but strict scrutiny of paupers' applications seems essential.[8] Much has been made—and with good reason—of a prisoner's right of access to the courts. *E.g., Bounds v. Smith*, 430 U.S. 817, 821–25, 97 S.Ct. 1491, 1494–96, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 577–80, 94 S.Ct. 2963, 2985–86, 41 L.Ed.2d 935 (1974). But, this right of access is an equalizing device; there is no logic in elevating an inmate's standing to sue above that of any other litigant. And, where an effort is made to employ the prophylaxsis of 28 U.S.C. § 1915 in the commencement of any action, the courts should not hesitate to bar the door if it has fairly been shown that the plaintiff can afford to sue or that the proceeding is founded in malice or devoid of legal merit.

In line with the foregoing, and upon the authority of 28 U.S.C. § 1915(d), the magistrate's preliminary approval of the plaintiff's forma pauperis application is rescinded; the defendants' objection thereto is sustained; and the action is dismissed without prejudice to Temple's right to sue upon his putative claims in a new action prosecuted in the customary manner, with prepayment of filing fees, etc.

*It is so ordered.*

8. Such scrutiny should, of course, devolve equally upon all § 1915(a) applicants. *See* n. 5,